ADOLPHUS KOPPIKUS v. THE STATE CAPITOL COMMISSIONERS.

THE Act of March 29th, 1860, providing for the construction of a State Capitol in the city of Sacramento, is not unconstitutional, as creating an indebtedness or liability on the part of the State exceeding the limit of $300,000, prescribed in the eighth article of the Constitution. The Act authorizes the Commissioners therein named to contract only to the extent of $100,000.

No analogy exists between this case and *Nougues* v. *Douglass*, (7 Cal. 65) because there the Act of 1856 authorized a contract in a sum not exceeding $300,000, payable in State bonds, and at the time of its passage the State was indebted to the amount limited by the Constitution, without a vote of the people.

Nor is the Act of 1860 unconstitutional, because it provides that the compensation to the owners of the land taken shall be ascertained by three Commissioners, and thus deprives the owners of the right to a jury trial. The provision of the Constitution, that "the right of trial by jury shall be secured to all, and remain inviolate forever," applies only to civil and criminal cases in which an issue of fact is joined. The proceeding to ascertain the value of property, under the Act of 1860, and the compensation to be made, is not an action at law. It is an inquisition for the ascertainment of a particular fact, as preliminary to future proceedings, and it is only requisite that it be conducted in some equitable and fair mode, to be provided by law, either with or without a jury, opportunity being allowed to owners and parties interested in the property to give evidence as to its value, and to be heard thereon.

The language of the Constitution as to the right of trial by jury, was used with reference to the right as it exists at common law. This right of trial by jury cannot be claimed in equity cases, unless an issue of fact be framed for the jury, under the direction of the Court.

In this case, the District Judge did not err in refusing the application to set aside the award of the Commissioners, and for a new trial. The proceedings before the Commissioners were regular, and "appear to have been done in good faith," within the act.

WRIT OF ERROR to the Sixth District Judge.

Proceedings to condemn, for the use of the State, certain lots of ground, under the Act of March 29th, 1860, to provide for the construction of the State Capitol in the city of Sacramento.

The proceedings were commenced by a petition, as follows:

NOTICE TO PROPERTY OWNERS.

"To the Hon. John H. McKune, District Judge for the Sixth Judicial District, county of Sacramento, State of California—John G. Downey, Acting Governor; Johnson Price, Secretary of State; Thomas Findley, State Treasurer; A. C. Monson and Alfred Redington, by Thomas H. Williams, Attorney-General, respectfully petitioning, represent:

"That they compose the Board of Commissioners created by the act entitled 'An Act to provide for the Construction of the State Capitol in the city of Sacramento,' approved March 29th, 1860.

"Your petitioners further represent, that they have caused a description and abstract of the title to the ground or tract of land described in the first section of said act, to be made, setting forth the names and residence of each owner or person interested therein in any manner whatever, or who claims any interest therein, present or future, so far as known to the Attorney-General, or as appears by record in the

17

Recorder's office of Sacramento county; which said description and abstract of title is herewith filed, marked 'A,' and made part of this petition.

" Wherefore, the premises considered, your petitioners pray that your honor will appoint Commissioners, or cause to be appointed Commissioners, to ascertain the compensation to be made to the person or persons lawfully entitled to the same, for the land in said act described, and hereinbefore mentioned, or any part thereof. As in duty bound, they will ever pray, etc.

" Respectfully,

" THOMAS H. WILLIAMS,

" Attorney-General."

" STATE OF CALIFORNIA, County of Sacramento.—Having read the foregoing petition, I order that the hearing of the same be set for Friday, the first day of June, A. D. 1860, at the hour of ten and a half o'clock, A. M.; that said hearing take place at the Court House in the city of Sacramento, State of California; and the persons named in the abstract of title filed with the petition aforesaid, together with all others interested in the land described and mentioned in said petition and abstract, are hereby required to appear before me at the time and place aforesaid, to show cause, if any they have, why the prayer of said petition should not be granted.

" Given under my hand, at chambers, in the city of Sacramento, on this, the twenty-fifth day of April, A. D. 1860.

" JOHN H. McKUNE,

" District Judge, Sixth District."

Annexed to the petition was the description and abstract of title referred to therein. Publication having been made, in accordance with the act, the District Judge appointed three Commissioners to ascertain and settle the compensation, etc. These Commissioners, having organized, and given due notice to all parties to present their claims, and having heard all the evidence presented for and against the same, finally reported the result of their labors to the District Judge of the Sixth District. The amount awarded to plaintiff in this proceeding was $1,250, as value of land and damages, and nine hundred dollars for improvements, and damages.

A day was set for hearing all motions, protests, and petitions relative to the subject matter of the award of the Commissioners. Plaintiff, on

Koppikus *v.* State Capitol Commissioners.

the day fixed, filed a petition for a rehearing, so far as he was concerned, on the ground that the compensation awarded him, and the proceedings before the Commissioners in reference thereto, were not in good faith, and annexed to his petition his affidavit, specifying that he claimed, as the value of his land, and damages, $6,500 ; that the property was his homestead, and cost him $4,600 cash; that he introduced before the Commissioners three witnesses, who stated the value of his lot at $1,800, $2,000, and $2,500, and other witnesses, who put the value of his improvements at $2,975, making a total—taking $1,666 as the average value placed upon the lot—of $4,641 ; that the only conflicting testimony as to the value of the improvements was one witness, who put it at four hundred dollars, and that he knew nothing of the matter ; that in opposition to his claim three witnesses were introduced, two of whom put the value of his lot at $1,100, and one at $1,500—making an average of $1,666 ; and that the Commissioners were biased in favor of the city and State.

The retrial of the matter was denied, and the record and proceedings were brought before the Supreme Court, by writ of error to the District Judge.

*C. A. Johnson,* for Plaintiff in Error.

1. The refusal of the Court below to grant plaintiff a retrial, was a gross abuse of discretion. He proved his property to be worth $4,600, and was awarded only $2,000.  (2 Cal. 183 ; 3 Id. 55 ; 4 Id. 395 ; 5 Id. 137.)

2. The second section of the Act of March 29th, 1860, is unconstitutional and void, so far as it seeks to deprive plaintiff of his property by judicial proceedings, and deprives him of a trial by jury.

3. The act is unconstitutional, because it creates a State debt exceeding the sum of $300,000, without vote of the people.  (Const. art. 8 ; *People* v. *Johnson,* 6 Cal. 499 ; *Nougues* v. *Douglass,* 7 Id. 65.)

*A. C. Monson,* for Defendants in Error.

1. This Court will only correct such errors which the Court below has committed in matters of law.  It will not disturb the proceeding of the Commissioners or of the District Judge, upon matters of fact.

2. Where land is taken for public use, the damages may be assessed in any equitable and fair mode, without the intervention of a jury, inasmuch as trial by jury is only required on issues of fact in civil

Koppikus *v.* State Capitol Commissioners.

and criminal cases in Courts of justice.   (2 Kent's Com. 392, note *B; Railroad Company* v. *Davis,* 2 Dev. & Batt. 451, 464; *Willyard* v. *Hamilton,* 7 Ohio, 449.)

3. It is for the Legislature to judge of the degree of necessity which exists for the exercise of the right of eminent domain.   To authorize the exercise of this right, it is not requisite that the use and benefit to be derived shall be universal, nor in the largest sense even general. Though confined to a particular district, it may still be public.   Though some parties are more benefited than others, this forms no objection to the use, if the public interest and convenience are subserved.   (*Hartwell et al.* v. *Armstrong et al.* 19 Barb, S. C. 166.)

4. It is not contended that the proceedings of the Commissioners were irregular, but it is charged that they did not act in good faith. No affidavits showing corruption or prejudice on the part of the Commissioners were read in the Court below; but they failed to award to the petitioner what he alleges was the cost of his property, and hence they are charged with having acted in bad faith.   What was the evidence before the Commissioners does not appear in any authentic manner; but take the evidence as set forth in the affidavit of petitioner, and it appears that there was evidence before the Commissioners fixing the value of the property lower than what they awarded.   Boyd and others valued the lot at $1,100; the Commissioners awarded $1,250. Luce valued the improvements at four hundred dollars; the Commissioners awarded nine hundred dollars.   But the Commissioners did not sit as a Court; they had the right to take the opinions of others, in whose integrity and judgment they had confidence, without swearing them as witnesses.   They could converse with all classes of men concerning the property, and for aught this Court knows, their judgment upon questions of value may combine the opinions of a hundred men. (In the matter of *William* v. *Anthony, sts.* 19 Wend. 694.)

FIELD, C. J. delivered the opinion of the Court—BALDWIN, J. and COPE, J. concurring.

The plaintiff in error bases his objections to the action of the District Judge upon the alleged unconstitutionality of the Act of March 29th, 1860, providing for the construction of the State Capitol in the city of Sacramento, and the alleged error of the Judge, in his refusal to set aside the award of the Commissioners, fixing the compensation to be made to the plaintiff, as owner of a parcel of the land intended for the site of the capitol.

Koppikus *v.* State Capitol Commissioners.

1. The unconstitutionality of the act is asserted on two grounds : first, that it creates an indebtedness or liability on the part of the State exceeding the limit of $300,000, prescribed by the eighth article of the Constitution ; and, second, that it provides that the compensation to the owners of the property taken shall be ascertained by three Commissioners, and thus deprives the owners of the right to a trial by jury.

The act provides, that the entire cost of the capitol shall not exceed $500,000, and it is hence inferred, that the Commissioners are authorized to contract for a building requiring an expenditure of that amount; but the inference is not warranted.   The Legislature undoubtedly intended by the provision to indicate the amount within which the work is to be constructed, and to furnish, in some respect, a guide to the Commissioners in the adoption of a plan for the building ; but the provision does not authorize any contract, by which a debt or liability to that amount against the State can be created.   The Commissioners are only authorized to contract to the extent of $100,000 ; though a plan be adopted by them which may require, in its execution, the half million designated.   For the liabilities which may be thus incurred, the act makes provision ; it appropriates, for that purpose, the requisite sum, thus anticipating their existence, and discharging them as they arise. (See *State* v. *McCauley and Tevis*, 15 Cal. 429.)   Before any greater liabilities can be created, further legislation must be had.

It will be thus seen that there is no analogy between this case and the case of *Nougues* v. *Douglass et al.*, (7 Cal. 65) cited by the plaintiff in error.   The Act of 1856, considered in the latter case, authorized a contract for the construction of a capitol for a sum not exceeding $300,000, and provided that the payments should be made in bonds of the State, redeemable in thirty years ; and at the time of its passage, the State was indebted to the amount limited by the Constitution without a vote of the people.

The objection to the constitutionality of the act on the second ground —that it authorizes the compensation to the owners for the land taken to be ascertained by Commissioners, and not a jury—is untenable. The provision of the Constitution, that " the right of trial by jury shall be secured to all, and remain inviolate forever," applies only to civil and criminal cases in which an issue of fact is joined.   The language was used with reference to the right as it exists at common law.   It is true, that the civil law was in force in this State at the time of the adoption of the Constitution, but its framers were, with few exceptions,

from States where the common law prevails, and where the language used has a well-defined meaning. The people who, by their votes, adopted the Constitution, at least a vast majority of them, were also from countries where the common law is in force, and they looked upon the right secured as the right there known and there held inviolate. It is in this common law sense that the language has always been regarded by the Courts of this State. It is a right " secured to all," and " inviolate forever," in cases in which it is exercised in the administration of justice according to the course of the common law, as that law is understood in the several States of the Union. It is a right, therefore, which can only be claimed in actions at law, or criminal actions, where an issue of fact is made by the pleadings. It cannot be claimed in equity cases, unless such issue be specially framed for a jury under the direction of the Court. It cannot be asserted upon an issue at law, for that is a matter purely for the Court. The fact, therefore, that property and rights of property may be involved in the disposition of a particular case or proceeding, does not determine the right to a trial by jury. There must be an action at law, as contradistinguished from a suit in equity, and from a special proceeding, or a criminal action, and an issue of fact joined therein upon the pleadings, before a jury trial can be claimed as a constitutional right. The proceeding to ascertain the value of plaintiff's property, and the compensation to be made to him when taken, is not an action at law: it is an inquisition on the part of the State for the ascertainment of a particular fact, as preliminary to future proceedings, and it is only requisite that it be conducted in some equitable and fair mode, to be provided by law, either with or without the intervention of a jury, opportunity being allowed to the owners or parties interested in the property to present evidence respecting its value, and to be heard thereon. The Constitution of New York, of 1821, provides that, " the trial by jury, in all cases in which it has been heretofore used, shall remain inviolate forever;" and in *Livingston* v. *The Mayor of New York*, (7 Wend. 85) objection was taken to the mode adopted for ascertaining the compensation to be paid to the owners of land in the opening of streets in the city of New York. It was insisted, as in the present case, that the estimate should have been made by a jury, and not by Commissioners appointed for that purpose; but the Court said: " The provision of the Constitution relative to the trial by jury, relates to the trial of issues of fact, in civil and criminal proceedings in Courts of justice, and has no relation to cases of this

kind. Although damages have frequently been ascertained by the oaths of twelve freeholders, both before and since the adoption of the Constitution, yet these were not jury trials within the spirit or meaning of that provision." (See also, to the same effect, *Beekman* v. *The Saratoga and Schenectady Railroad Co.*, 3 Paige, 75; *Railroad Company* v. *Davis*, 2 Dev. & Batt. 465; *Willyard* v. *Hamilton*, 7 Ham. Ohio, 453, *et seq.*)

2. The application to the District Judge to set aside the award of the Commissioners, and for a new trial, was properly denied. The act provides that, if the proceedings of the Commissioners are regular, and "appear to have been done in good faith," the Judge "shall, by order, confirm their finding and conclusion; otherwise, he shall make such order as may be just and proper, in reference to a retrial of the same, or any part of said proceedings." It is not pretended that the proceedings of the Commissioners were irregular, but it is charged that they were not "done in good faith." It appears from the affidavit read upon the application, that there was conflicting testimony as to the value of the property claimed by the plaintiff in error, and that the estimate placed by the Commissioners exceeded that given by some of the witnesses. The imputation upon the good faith of the Commissioners appears to rest upon two grounds: first, that they did not award as the value of the premises what the plaintiff alleges was their cost; and, second, that they did not give greater credence to the testimony produced on behalf of the plaintiff, than to the testimony offered on the part of the State. It requires no argument to answer positions of this character. They fall with their statement.

The award of the Commissioners, and the action of the District Judge thereon, must be affirmed, and it is so ordered.