EMILY J. BROWN v. GEORGE M. BUCK, CIRCUIT JUDGE OF KALAMAZOO COUNTY.

*Constitutional law—Equity jurisdiction and practice—Jury—Appeal —Mandamus.*

1. *Mandamus* is a proper remedy to compel an *original* hearing in a chancery suit.

2. Act No. 267, Laws of 1887, in so far as it assumes to provide for a final decision of questions of fact in chancery suits by the verdict of a jury, and for the rejection of testimony by the presiding judge, as in a suit at law, is unconstitutional.

3. As it is not competent for the Legislature to deprive the Supreme Court of its revisory jurisdiction over all the other State tribunals, no legislation which practically destroys it is valid.

4. The following propositions are summarized from the opinion of Justice CAMPBELL:

   *a*—The system of chancery jurisprudence has been developed as carefully and as judiciously as any part of the legal system, and the judicial power includes and always must include it.

   *b*—Any change which transfers the power that belongs to a judge to a jury, or to any other person or body, is as plain a violation of the Constitution as one which should give the courts executive or legislative power vested elsewhere.

   *c*—The cognizance of equitable questions belongs to the judiciary as a part of the judicial power, and under our Constitution must remain vested where it always has been vested heretofore.

   *d*—Laws passed for one purpose, and under one title or category, cannot be made to do duty under a foreign enactment, which was not in any way within their contemplated range.

   *e*—The trial by jury in common-law cases is guarded by a large body of provisions designed to procure a fair and impartial jury, extending from the making of the jury-lists through the process of selecting and summoning regular jurors and talesmen to the completion of the panel through challenges and other tests, all of which provisions, whether statutory or not, belong to the machinery devised for the common-law courts, and cannot be adopted, without new and careful legislation, to anything else.

   *f*—When any matter becomes involved in a chancery suit, the necessities of justice and equity require that all persons and all things concerned in the controversy shall be brought before the

court to have their respective interests charged or protected, and to end the controversy once for all.

g—When a case is tried by a common-law jury, one verdict settles the whole issue, and, unless set aside, furnishes the complete basis of a judgment, which cannot in anything depart from it; and there is and can be no issue which the jury do not dispose of.

h—It is within the power of a legislature to change the formalities of legal procedure, but it is not competent to make such changes as to impair the enforcement of rights.

i—The functions of judges in equity cases, in dealing with questions of fact and law, is as well settled a part of the judicial power, and as necessary to its administration, as the functions of juries in common-law cases.

j—The right to have equity controversies dealt with by equitable methods is as sacred as the right of trial by jury.

k—Whatever may be the machinery for gathering testimony or enforcing decrees (in equity cases), the facts and the law must be decided together; and when a chancellor desires the aid of a jury to find out how facts appear to such unprofessional men, it can only be done by submitting single issues of pure fact, and they cannot foreclose him in his conclusions unless they convince his judgment.

l—The constitutional provision directing the Legislature to abolish distinctions between law and equity proceedings, as far as practicable, does not blend legal and equitable interests, although favoring the removal of such as are nominal rather than real.

Mandamus to require respondent to set aside a decree in a chancery suit, tried by jury under the provisions of Act No. 267, Laws of 1887, and to hear it in the usual manner. Submitted June 4, 1889. Granted June 14, 1889. The facts are stated in the opinion.

*Dallas Boudeman,* for relator.

*Hawes & Luby,* for respondent.

CAMPBELL, J. Relator represents that in April, 1888, a bill in chancery was filed in Kalamazoo county by Sarah E. Field, to set aside a deed made to relator by Thomas B. Lord,

who was father of both parties, upon the grounds generally set up in such cases, of fraud, undue influence, and incapacity. Issue being joined, the complainant made claim under the statute of 1887 for a trial by jury. This demand was allowed, and certain issues were submitted, which to some extent covered the charges, but not in a very tangible way, and the jury gave answers to the specific questions. The circuit judge, acting entirely on these answers, made a decree in favor of complainant, canceling the deed, and refused to exercise his own judgment in the case. A *mandamus* is asked, to require him to set aside the decree, and to hear the cause and decide it himself.

It is due to the circuit judge to say that he took this course to enable the validity of the statute to be passed upon in this Court, inasmuch as this question has been raised in several parts of the State, and needs to be settled in order to procure uniformity of practice.

A preliminary objection was made to the use of the process of *mandamus* to determine the dispute, which it is insisted should come up by appeal. But there is no force in the objection. We are informed by the return that the circuit judge never passed upon the questions of fact himself. An appeal would, therefore, in some circumstances, and in one view of the case, require us to act as a tribunal of original powers, and not by way of review, which, in equity cases, is not in our province. It might also, and probably would, require us either to decide on a partial state of facts, or remand the cause for rehearing, which is not contemplated in chancery appeals. If the circuit judge was wrong in the theory on which he thought it his duty to act, the case has never been heard at all in any legal way. The *mandamus* is not asked as a means of reviewing the merits, but only to compel an original hearing. For this purpose it is a proper remedy.

The statutory provision now in controversy consists of a

recasting of a section of the old Compiled Laws intended to give an opportunity of trial in open court, if the court deem it proper, and providing means in such case for securing a record of the testimony to be used on appeal.  This section, which was originally section 3511 of the compilation of 1857, went through a number of changes before it became section 5093 of the compilation of 1871, and after several more changes appears as section 6647 of How. Stat.  Some confusion has existed because, by introducing so many forms of one section, it has not always been easy to construe it in connection with the whole chapter on courts of chancery, but they have, by practical construction, been fairly harmonized.  In 1887 this section was sought to be radically changed by converting a chancery hearing to something meant to resemble a trial at law, but confining this change mostly to jury trials, and not putting hearings without a jury on the footing of common-law trials without a jury.  As this is the only section altered, and it is but part of a full system matured and simplified by the experience of considerably more than half a century, it is brought to our attention under two points of view:

1. As claimed to be so imperfect and incongruous as to be void for its deficiencies.

2. As invalid on broader constitutional grounds.

The former of these two questions seems proper to be glanced at first; and it makes it desirable to refer somewhat to the growth of the system.

As Michigan had a long territorial experience, its judicial system naturally became fashioned in close analogy to that of the United States, and so recognized and perpetuated in their essentials the classification of legal and equitable rights as involving the necessity of separate administration in important particulars.  The Constitution of the United States recognized the division of ordinary civil jurisprudence into cases at law and cases in equity, and it has been held by

the Supreme Court of the United States that this recognition puts it beyond the power of Congress to make any serious change in that classification. In *Carpentier v. Montgomery*, 13 Wall. 480, the importance of the distinction, and the impracticability of disregarding it, was somewhat explained in such a case as is now under consideration, as in several previous cases it had been held that the policy enjoined by Congress of securing as far as possible uniformity of practice between the state and United States courts could not be carried so far as to confound the legal and equitable jurisdictions. *U. S. v. Howland*, 4 Wheat. 115; *Boyle v. Zacharie*, 6 Pet. 658; *Robinson v. Campbell*, 3 Wheat. 222; *Livingston v. Story*, 9 Pet. 654; *Russell v. Southard*, 12 How. 139; *Neves v. Scott*, 13 Id. 268; *Boyce's Executors v. Grundy*, 3 Pet. 210; *Bodley v. Taylor*, 5 Cranch, 191. These and many other cases which might be cited show the general course of decision in the Supreme Court.

As Michigan received the common law free from any older statutory admixture, it naturally followed the English divisions of law and equity, and under the enlightened administration of Chancellors FARNSWORTH and MANNING the practice, which was largely shaped by legislation in accordance with their views, received the form which it now has, and our statutes embody in a very intelligible way a system so complete as to need very little aid from other sources.

So far as the statutes provide for the earlier stages of a cause, up to the preparation for hearing, this new statute does not interfere, except as to testimony, in which the change is radical, as it is also radical in regard to the mode and incident of the hearing and the preparations for appeal. And here occurs a series of difficulties requiring attention. As the law stood before, the testimony might be taken by deposition or in open court, and, upon specific issues of fact suitable for a jury, the aid of a jury might be invoked. But in all cases the testimony was secured and preserved for use on

appeal, and in this Court each case was to be reheard on the whole testimony, and on that rehearing this Court was enabled and required to render its own decree, by simple affirmance if the decree below was satisfactory, and in other cases by such a change, partial or total, as would make the final disposition such as it should have been in the first place. But in all cases where the cause had proceeded to a hearing on facts, the law contemplated that this Court should make a final disposition on the merits and not remand it for a new trial or hearing on issues already once tried and decided. The sections of the statute which refer to the action of this Court in appellate cases remain unchanged, and are the only statutory method of bringing into this Court chancery appeals. As it is not competent for the Legislature to deprive the Supreme Court of its revisory jurisdiction over all the other State tribunals, no legislation which practically destroys it is valid.

The statute of 1887 (Laws of 1887, p. 358) undertakes to provide that—

"Either party shall also be entitled to the right to a jury, to be demanded in the same manner as in a suit at law, and the verdict of such jury on any question of fact shall have the same force and effect in the circuit [court] in chancery, and in the Supreme Court on appeal, as the verdict of a jury in an action at law.

"Whenever a jury is demanded as aforesaid, an issue or issues shall be framed under the direction of the court, if, in the opinion of the court, such issue shall be necessary to be submitted to such jury, and in all cases of trial in open court, whether with or without a jury, it shall be the duty of the court trying said cause to rule upon all questions of admissibility of testimony in the same manner and with the like effect as in a suit at law.    *    *    *.    *    *    *    *

"In case the cause shall have been tried by a jury on demand of either of the parties, either party shall in like manner be entitled to make and settle a case as provided in this section, and it shall not be necessary to set forth in such case all the testimony given upon such trial, but only so much thereof as may be necessary to a clear understanding of the questions of law arising therein.    *    *    *    Upon the case so

made and filed, an appeal may be taken to the Supreme Court by any of the parties, as in ordinary chancery cases."

It requires but a little examination to discover that these changes cannot be carried into effect in practice, and are entirely in conflict with the rights of parties, as well as with the remainder of the retained chancery system. Merely formal defects could perhaps be corrected, but the defects are more than formal.

Apart from the serious question whether, under cover of amending one section of the Compiled Laws, the whole body of the laws can be revolutionized, it is very certain that laws passed for one purpose, and under one title or category, cannot be made to do duty under a foreign enactment, which was not in any way within their contemplated range. While the old law was adequate to secure the aid of jurors for advisory purposes, the case is different when an attempt is made to give a trial by jury which shall have the effect of a common-law inquest. The trial by jury in common-law cases is guarded by a large body of provisions designed to procure a fair and impartial jury, extending from the making of the jury-lists through the process of selecting and summoning regular jurors and talesmen to the completion of the panel through challenges and other tests. All of these provisions, whether statutory or not, belong to the machinery devised for the common-law courts, and cannot be adapted, without new and careful legislation, to anything else. But this new statute introduced other complications which are quite as serious.

When any matter becomes involved in a chancery suit, the necessities of justice and equity require that all persons and all things concerned in the controversy shall be brought before the court to have their respective interests charged or protected, and to end the controversy once for all. Specific relief is generally required, and usually more or less of the defendants have conflicting interests to a greater or less extent, which require different issues and different treatment;

and these difficulties frequently become known or developed during the course of the investigation.

This law, as probably would be almost unavoidable if the essentials of common-law practice are followed, is framed on the theory of single contesting parties. No one party or set of parties can be authorized to become directors of the suit, and determine in what manner it is to be tried, or select, the jury to try it. It would be difficult, at least, to have a case in which several parties have several interests, which may, nevertheless, be more or less affected by what happens to the rest, decided partly by a jury and partly in some other way. Under the standing practice the only way to secure justice to all has been found to be to have the whole case heard at once, so that the same arbiter passes on all the varied interests, and adjusts them. Each has a right to have the whole of his case decided by one tribunal, and if a jury should find an issue in one way on one party's demand, and the court should find the same fact in another way, there could be no decision. So a jury might easily find a verdict which would have to be set aside for misdirection or improper dealings with testimony, and a second jury might find differently, and involve a new complication before the case is disposed of. The differences between law and equity issues create many more difficulties which need not be dwelt on, because the defects are still more radical.

When a case is tried by a common-law jury one verdict settles the whole issue, and, unless set aside, furnishes the complete basis of a judgment, which cannot in anything depart from it; and there is and can be no issue which the jury do not dispose of. The judgment follows as a matter of course, and, if taken to an appellate court, the verdict cannot be altered, and must stand completely good or completely bad. A verdict on part of the issues and a disagreement on the rest is no verdict. It is not possible to have one verdict in a suit in equity which shall decide the whole con-

troversy, and, if it were, this law does not provide for it, and provides for nothing in its place. It makes no provision for a jury except on detached issues, unless, as is dimly suggested, the whole pleadings are laid before them, and, if that should be done, it would be impossible to frame a general verdict on which any decree could be entered. At law, in all but a few possessory cases, the verdict is for the recovery of a specific sum of money, or a specific thing, on which a single and simple judgment can be rendered. In equity there are few, if there are any, cases where specific relief is not required, and the adjustment of the conflicting or separate rights. If specific issues only are submitted to the jury, some part of the controversy must always be decided by the court, and in that case the division would make it impossible, by any known means, to have the case disposed of in an appellate court. And this suggests another difficulty which would in any event render this law inoperative.

The only method of review provided in the statutes is by an appeal, and that appeal is made as all appeals require it to be made, so as to lead to a review of the whole case, and a decision on the whole merits. The only conceivable purpose of this law is to make the verdict final on all that it covers. But the law forbids inserting in the case any more of the testimony than will explain the bearings of the rulings. If wrong rulings have been made, it contemplates their correction in some way. But if this is done the verdict must be set aside. This statute does not provide for taking or settling exceptions. It provides no method for having this Court decide on the rulings upon the admission or rejection of testimony, and it provides no means for supplying testimony which has been improperly ruled out, or for granting a new trial before the same or any other jury on the whole or any part of the case. It leaves the case subject to nothing but the appeal already provided for chancery decisions, and makes no provision whatever for either supplying omitted testimony,

or for finding out what a jury would have done had there been no testimony improperly let in or shut out. It does not mean, as it could not lawfully mean, to prevent a review in this Court, and yet it provides no method for getting it in any sufficient way. And it is open to the incurable mischief of introducing changes in such a crude and contradictory manner that, while there are many defects patent to all observers, there are probably many more which would appear whenever any case actually arises in practice in the complicated controversies which the necessities of jurisprudence turned over to equity because common-law methods could not deal with them.

This leads to the inquiry whether it is competent for legislation to bring about any such radical change as is here attempted. We think it is not. The decisions of the United States Supreme Court before referred to do not bind state practice, but they nevertheless to some extent indicate the real difficulty. That tribunal did not decide that under the United States Constitution there could be no change in equitable procedure, because the whole body of chancery practice has been repeatedly amended and simplified by that Court. Their rulings mean neither more nor less than that there are various kinds of interests and controversies which cannot be left without equitable disposal without either destroying them or impairing their value. It is within the power of a legislature to change the formalities of legal procedure, but it is not competent to make such changes as to impair the enforcement of rights. In rude times, when there is no business, and no variety of property rights, very simple remedies are sufficient. But where the ordinary remedies have become inadequate to deal with more extended or peculiar interests, such as multiply in all civilized countries, different methods and different tribunals become necessary. The universally recognized basis of equitable jurisprudence, found in statutes and constitutions, as well as

in the reports and text-writers, is the inadequacy of the common law to deal with these subjects. A principal basis of that inadequacy was the nature of the tribunal passing on the facts. In common-law issues fact and law can be readily separated; but in the great majority of equity proceedings it is impossible to make any such separation. The functions of judges in equity cases in dealing with them is as well settled a part of the judicial power, and as necessary to its administration, as the functions of juries in common-law cases. Our constitutions are framed to protect all rights. When they vest judicial power they do so in accordance with all of its essentials, and when they vest it in any court they vest it as efficient for the protection of rights, and not subject to be distorted or made inadequate. The right to have equity controversies dealt with by equitable methods is as sacred as the right of trial by jury. Whatever may be the machinery for gathering testimony or enforcing decrees, the facts and the law must be decided together; and when a chancellor desires to have the aid of a jury to find out how facts appear to such unprofessional men, it can only be done by submitting single issues of pure fact, and they cannot foreclose him in his conclusions unless they convince his judgment.

The very wise provision of our Constitution, which by section 5 of article 6 directs the Legislature to abolish distinctions between law and equity proceedings, is carefully worded, and requires it to be done only as far as practicable. It does not blend legal and equitable interests, although no doubt it does favor the removal of such distinctions between those as are nominal, rather than real. The purpose of the Constitution has been very liberally carried out, and there is now hardly any distinction left that is merely formal. But the clause referred to was suggested, as all men know, by the then recent attempts in other states to abolish systems of procedure which had become overtechnical, and provide forms of rem-

edy of a more simple character.   In doing this the distinction in names between legal and equitable remedies was abolished.   But it very soon became manifest to all jurists that the class of rights which, for want of a better definition, were loosely called "equitable," and which had only been included under that name because the common-law methods were not adapted to enforce them, differed from other rights in their essential nature, and not in form only, and that, by whatever name they were called, they could only be efficiently protected and made available by the means known as "equitable."

In all ages, and in all countries, this distinction by nature, which was never called "equitable" except in English jurisprudence, where it was first so called from an idea that the rights were imperfect because unknown in the rude ages, when property was scanty, and business almost unheard of in the regions outside of great cities, has been recognized and provided for by suitable methods substantially similar in character.   Juries cannot devise specific remedies, or safely deal with complicated interests, or with relief given in successive stages, or adjusted to varying conditions.   Theory amounts to nothing in the history of jurisprudence.   The system of chancery jurisprudence has been developed as carefully and as judiciously as any part of the legal system, and the judicial power includes it, and always must include it.   Any change which transfers the power that belongs to a judge to a jury, or to any other person or body, is as plain a violation of the Constitution as one which should give the courts executive or legislative power vested elsewhere.   The cognizance of equitable questions belongs to the judiciary as a part of the judicial power, and under our Constitution must remain vested where it always has been vested heretofore.

The case in which relator seeks our interference has never been heard by the court as it should have been, and a *mandamus* must be allowed to direct the circuit judge to rescind his decree, and allow the case to be brought to a hearing

before the court for final disposal on pleadings, and on proofs to be properly taken.

The other Justices concurred.