[Civil No. 2051.  Filed October 6, 1924.]

[229 Pac. 696.]

R. R. MILLER, Appellant, v. JOHN S. THOMPSON,
Appellee.

TRIAL—STATUTE DECLARING VERDICT IN EQUITY CASES MERELY AD-
VISORY IS CONSTITUTIONAL.—Laws of 1921, chapter 125, amend-
ing Civil Code of 1913, paragraph 542, and declaring verdict in
equity cases only advisory, is constitutional.

APPEAL from a judgment of the Superior Court
of the County of Greenlee.  W. R. Chambers, Judge.
Affirmed.

Mr. E. V. Horton and Mr. Dave W. Ling, for Ap-
pellant.

Mr. H. A. Elliott, Mr. B. B. Shimmel and Mr. A. R.
Lynch, for Appellee.

ROSS, J.—In this action, which was brought to
foreclose a chattel mortgage, the issues were sub-
mitted to a jury and the verdict thereon was in favor
of the defendant.  The court treating the verdict as
advisory only disregarded it and made findings in
favor of the plaintiff and entered judgment accord-
ingly.  The defendant appeals, assigning the court's
action as error.

The only question involved is the constitutionality
of chapter 125, Session Laws of 1921, which expressly
authorizes the court to do as it did.

Chapter 125 is an amendment of paragraph 542,
Civil Code of 1913.  The latter paragraph made the
verdict of the jury in equity cases binding upon the

Conditions and restrictions which may be imposed on jury
trial, see note in 98 **Am. St. Rep.** 538.  See, also, 6 **R. C. L.** 458.
See 1 **C. J.** 594.

court. The amendment changed the rule so that the verdict should be advisory only. The exact question, to wit, the constitutionality of chapter 125, *supra,* was involved in *Donahue* v. *Babbitt, ante,* p. 542, 227 Pac. 995, and in that case we held the law valid. For the reasons for so holding we refer to the opinion in that case.

The judgment is affirmed.

McALISTER, C. J., concurs.

LYMAN, J. (Concurring).—This action is to foreclose a chattel mortgage. The issues of fact were submitted to a jury on a single interrogatory, which was answered favorably to the defendant. The court, treating this verdict of the jury as advisory only, rendered judgment for the plaintiff. Authority to do so is found in chapter 125 of the Session Laws of Arizona of 1921, which reads as follows:

"Section 1. That paragraph 542, chapter XIV, part II, of title VI, Revised Statutes of Arizona, 1913, Civil Code, entitled 'Civil Procedure' be and the same is hereby amended to read as follows:

"542. In all actions where equitable relief is sought, if a jury be demanded by either party, and where more than one material issue of fact is joined, the court, in its discretion may submit written interrogatories to the jury, covering all or part of the issues of fact, and such interrogatories shall be answered by the jury; provided, that such interrogatories shall be approved by the court, and each interrogatory shall be confined to a single question of fact and shall be so framed as to be answered by yes or no, and shall be so answered where yes or no is possible. In every such case the verdict of the jury shall be deemed advisory to the court in the determination of the action."

The correctness of the judgment is disputed upon the ground that this statute is unconstitutional, be-

cause in conflict with the declaration contained in the Constitution that "the right of trial by jury shall remain inviolate." Article 2, § 23, Constitution of Arizona.

There is nothing obscure or equivocal in the meaning of the statute, and unless in violation of the Constitution it affords authority for the judgment of the court. The question involved is whether "right of trial by jury" extends to cases in which "equitable relief is sought."

The terms in which this section of the Constitution is stated have been common to the Constitutions of many states of the Union for more than a century, and have often been the subject of consideration and construction by the courts. There has been no diversity of opinion that the right referred to is the right to a common-law jury, a jury in a common-law court to try common-law actions as distinguished from equity cases.

This phraseology is common to text-writers and judicial opinions, and has a fixed and established meaning. When used in a Constitution it carries with it the meaning which it had previously acquired. Both statutory and constitutional provisions, when borrowed from other jurisdictions, are taken with the judicial construction which had already been given to them. Cooley's Constitutional Limitations, p. 85.

The declaration in express terms refers to a right, and guarantees its perpetuity. It does not assume to create or establish a right, but aims to preserve inviolate one already established. It does not define it, nor prescribe the conditions under which it shall be enjoyed. The inference conveyed is that it is a right well understood, and needs no explanation. It was not thought necessary to define its bounds or set at rest any controversies affecting the scope of its

use and application. The framers of the Constitution assumed that they were writing in terms which would appeal to the understanding of a community blessed with the knowledge, as well as the benefits, of the elementary principles of Anglo Saxon civil liberty. When they used terms common to the Constitutions of our land, they had a right to assume that their language would be given the same construction which has uniformly been applied to the same words used in similar connection.

The jury is an adjunct of the common-law court, and trial by jury is a right belonging to that court. Courts of chancery were the outgrowth of necessity, to provide remedies for evils not reached by the common-law courts, and not possible of administration under the rules and procedure by which common-law courts were bound. A new system was devised to provide relief from the evils with which the old system was not able to cope. Of this new system the jury was not a part, because inconsistent with its plan and purpose.

That system in its essentials and fundamentals has become a part of the jurisprudence of this state as the successor to the same system previously enjoyed and administered in the territory of Arizona. In that court the right is not to have a jury, but to have equitable, remedies applied according to the ancient rules and practice of chancery, of which the jury was no part. That right, too, is the subject of constitutional guaranty. "The superior court shall have original jurisdiction in all cases of equity." Const., art. 6, § 6.

The right to enjoy the benefits of equity is as much a right to be protected and fostered as the right to jury trial in common-law actions. Nor can this right be enjoyed in its fullness and completeness in all in-

stances where the court is bound by the findings of a jury.

"There are classes of equitable suits in which the issues of fact upon which the relief depends are so intimately connected with the relief itself that their decision is plainly beyond the competence of a jury, and must of necessity be left to the court or judge." Pomeroy's Equity Jurisprudence, par. 116.

*Koppikus* v. *State Capitol Commissioners*, 16 Cal. 248; *Brown* v. *Circuit Judge*, 75 Mich. 274, 13 Am. St. Rep. 438, 5 L. R. A. 226, 42 N. W. 827; *Carpentier* v. *Montgomery*, 13 Wall. 480, 20 L. Ed. 698 (see, also, Rose's U. S. Notes).

The exercise of these separate jurisdictions in separate courts, or by the same court, was made a part of the judicial system of the United States and of the separate states, and has been usually guaranteed by Constitution.

The courts have spoken often and always to the same effect upon this point.

"But those who use this argument lose sight of the fundamental principle that the right of trial by jury, considered as an absolute right, does not extend to cases of equity jurisdiction." *Barton* v. *Barbour*, 104 U. S. 126, 26 L. Ed. 672 (see also, Rose's U S. Notes).

An Oregon case reads as follows:

"Article I, § 17, Const. Or., provides, 'In all civil cases the right of trial by jury shall remain inviolate,' . . . simply secures to suitors the right of trial by jury in all cases where it was demandable at common law. . . It applies to equitable suits to the extent only that in whatever instances a jury was demandable as of right, at common law, it is demandable now, under the Constitution, but the class of cases formerly determined by the court alone is not affected by it." *Raymond* v. *Flavel*, 27 Or. 219, 40 Pac. 158.

"This presents the question whether this is a case within the meaning of the constitutional provision:

... 'The right of trial by jury shall be inviolate.' ... Admitting for the purposes of this case, that it is a 'trial,' it will not follow that the act is in contravention of the constitutional provision. That provision does not require every trial to be by jury. Nor does it contemplate that every issue, which, by the laws in force at the adoption of the Constitution of the state, was triable by jury, should remain irrevocably triable by that tribunal. Trial by jury is guaranteed only in those cases where that right existed at common law. Such is the meaning of the constitutional provision referred to, and in statutory proceedings, proceedings in chancery, etc., the legislature is fully competent to dispense with the jury." *Kimball* v. *Connor*, 3 Kan. 414.

The Constitution of the state of Illinois provides:

"The right of trial by jury as heretofore enjoyed shall remain inviolate." Const. 1870, art. 2, § 5.

Of that declaration the court says:

"The provision in the Constitution preserving the right to trial by jury, has no reference to cases in which courts of equity have jurisdiction. The right to such trial is confined to cases at law." *Flaherty* v. *McCormick*, 113 Ill. 538; *Heacock* v. *Hosmer*, 109 Ill. 245; *Gilliam* v. *Baldwin*, 96 Ill. App. 323; *Ward* v. *Farwell*, 97 Ill. 593.

The New York Constitution provided that in all cases in which it has heretofore been used, trial by jury shall remain inviolate. Concerning it the court says:

"In an action of an equitable nature under the Code of Procedure, a party is not entitled as of right to a trial of issues by a jury, on the ground that the case is one in which courts of equity were formerly accustomed to award issues." *Moffat* v. *Moffat*, 10 Bosw. (23 N. Y. Super. Ct.) 468; *Lynch* v. *Metropolitan Ry. Co.*, 129 N. Y. 274, 26 Am. St. Rep. 523, 15 L. R. A. 287, 29 N. E. 315.

The Constitution of Georgia provided for trial by jury "in all civil cases," and of that the court says:

"We think that this clause refers to common-law and not to equity trials." *Isaacs* v. *Tinley,* 58 Ga. 457; *Gilbert* v. *Thomas,* 3 Ga. 575.

Another comment upon the same Constitution says:

"The Constitution of this state guarantees the right of jury trial. This means a trial according to the course of the common law, and secures the right only in cases where a jury trial was customarily used at common law; but in cases of purely equitable cognizance a trial by jury is not a matter of right, but it is addressed to the discretion of the chancellor." *Rieger* v. *Schulte,* 151 Ky. 129, 151 S. W. 395.

The California Constitution provides that—

"The right of trial by jury shall be secured to all, and remain inviolate forever." Const. 1849, art. 1, § 3.

Of that the court says

"The language was used with reference to the right as it exists at common law. It is true, that the civil law was in force in this state at the time of the adoption of the Constitution, but its framers were, with few exceptions, from states where the common law prevails, and where the language used has a well defined meaning." *Koppikus* v. *State Capitol Commissioners,* 16 Cal. 248.

It is the view of the appellant that the meaning of the "right to trial by jury" should be gathered solely from the law of the territory of Arizona as it was at the time of the adoption of the Constitution; that the right referred to is the right which the people of the territory of Arizona enjoyed at that time; and that the declaration of the Constitution is not a broad statement of human right, but the perpetuation of a territorial law. That is not the standard of construction usually applied by the courts in determining the meaning and scope of this declaration. Even where the Constitution more pointedly refers to the period immediately preceding its adoption as the source from

26 Ariz.—39

which this right is to be gathered, it has been construed as referring to the common-law right of trial by jury and not to that right as limited and circumscribed by local laws. *Lynch* v. *Metropolitan Ry. Co.*, 129 N. Y. 274, 26 Am. St. Rep. 523, 15 L. R. A. 287, 29 N. E. 315.

The California Constitution, containing this declaration in words identical with our own Constitution, was construed to refer to the common-law right, although the common law was not in force in California at the time the Constitution was adopted. *Koppikus* v. *State Capitol Commrs.*, 16 Cal. 248.

Some constitutional provisions do manifestly, under some circumstances, relate directly to the laws of the state as they existed at the time the Constitution was adopted. Counsel for appellant have seized upon these instances to give point to their argument. The question would not, however, be at all vital to this discussion had it not been for an unfortunate *dictum* found in the case of *Brown* v. *Greer*, 16 Ariz. 215, 141 Pac. 841, to which undue significance has been attached by counsel. That case is of no value in this discussion, because even though it became the law of the state at that time, it had no retroactive effect so as to construe the law as it existed at the time the Constitution was adopted. If we are to judge this paragraph of the Constitution in the light of the law of the territory as it existed at that time, we must look to the statement of that law antecedent to the time of the adoption, which we must presume was before those who framed the Constitution and those who adopted it. The Constitution might be supposed to have been framed in the light of the law as it then was; it could not be assumed to have been drawn with the knowledge of the law as it subsequently was declared to be.

However, that portion of the opinion in *Brown* v. *Greer* dealing with this subject was merely a *dictum*.

The question involved was the refusal of the court to call a jury upon the ground that the application for it was made ''too late,'' and not that the issues were not rightly submissible to a jury. Much less was there any question involved as to what effect should be given to the verdict of a jury. Upon this narrow issue the court indulges in comment upon the effect of the constitutional provision of trial by jury, and the state of the law as it existed before the adoption of the Constitution, matters wholly beyond the issues of that case, and apparently not the subject of argument. No authority is cited which supports, or tends to support, this *dictum,* which was never the law of this state, nor of the territory. An examination of the law of this territory just prior to the adoption of the Constitution will reveal the fallacy of that opinion. The Supreme Court of the territory had occasion more than once to state the law on this subject. In *Henry* v. *Mayer,* 6 Ariz. 103, 53 Pac. 590, decided in 1898, the opinion by Justice SLOAN says:

''It is also well settled that, in an action involving equitable jurisdiction only, the trial court is at liberty to disregard the verdict and findings of the jury, and make its own findings, and enter a decree in accordance with the latter; nor is it necessary in such a case that the court formally set aside the verdict and findings of the jury before entering a decree in accord with its own findings. *Improvement Co.* v. *Bradbury,* 132 U. S. 509, 10 Sup. Ct. Rep. 177, and cases therein cited'' (see, also, Rose's U. S. Notes).

In *Egan* v. *Estrada,* 6 Ariz. 248, 56 Pac. 721, decided in 1899, the opinion by Chief Justice STREET says, commenting upon the requirement of the statute, that—

''A special verdict so found shall, as between the parties, be conclusive as to the facts found. . . . We do not understand that the provisions of paragraph 786 above referred to are a modification of the well known rule in equity trials that where a court

submits certain questions to the jury to be answered the answers are advisory only, and that the court may disregard the answers, and find for itself different from the findings by the jury.''

This opinion of the court is especially pertinent in its application to the statute afterward passed by the legislature, to which we will later refer.

In *Taggart Mercantile Co.* v. *Clack,* 8 Ariz. 295, 71 Pac. 925, decided in 1903, the opinion by Justice DAVIS says:

''Where a case is one of equitable jurisdiction solely, the court is not bound to submit any issues of fact to a jury, and, if it does so, it is only for the purpose of 'enlightening its conscience, and not to control its judgment.' In such a case the court is at liberty to disregard the verdict and findings of the jury, either by setting them or any of them aside, or by letting them stand, and allowing them more or less weight in its final hearing and decree, according to its own view of the evidence in the case. *Improvement Co.* v. *Bradbury,* 132 U. S. 509, 33 L. Ed. 433, 10 Sup. Ct. Rep. 177; *Perego* v. *Dodge,* 163 U. S. 160, 41 L. Ed. 113, 16 Sup. Ct. Rep. 971 (see, also, Rose's U. S. Notes); *Henry* v. *Mayer,* 6 Ariz. 103, 53 Pac. 590; *Egan* v. *Estrada,* 6 Ariz. 248, 56 Pac. 721.''

In *Dooley* v. *Burlington Gold Mining Co.,* 12 Ariz. 332, 100 Pac. 797, decided in 1909, the opinion by Justice CAMPBELL says:

''He further insists that, though it be regarded as an equitable action, the court erred in refusing to award him judgment on the verdict. This last contention is disposed of by *Taggart Mercantile Co.* v. *Clack,* 8 Ariz. 295, 71 Pac. 925, where we said: 'But, where a case is one of equitable jurisdiction solely, the court is not bound to submit any issues of fact to a jury, and if it does so, it is only for the purpose of ''enlightening its conscience, and not to control its judgment.'' In such a case the court is at liberty to disregard the verdict and findings of the jury, either by setting them or any of them aside, or by letting

them stand, and allowing them more or less weight in its final hearing and decree, according to its own view of the evidence in the case.' "

This case, it will be noted, was decided about two years before the adoption of the Constitution, and no other declaration of this court upon that subject intervened, nor was there any legislation upon the subject during that period. As this case left the law in 1909, so it continued unchanged in regard to juries until the adoption of the Constitution in 1910. The Constitution was adopted in the light of this law, and not in the light of *Brown* v. *Greer*.

Ignoring the repeated construction given to the statutes and organic law of the territory by the Supreme Court, appellant calls attention to a statute passed by the legislature in 1899, and as slightly modified incorporated in the Code of 1901, where it appears in this form:

"1389. On the first day of the term, or on such day as may be fixed by the court, the docket shall be called, and if a jury is demanded by either party, such demand shall then be made, and if not then made, the right to a trial by jury shall be regarded as waived and the cause shall be tried by the court, unless the court shall otherwise order. The party in whose favor the verdict of the jury shall be, shall pay to the clerk of the court the amount of the *per diem* of the jurors before the verdict shall be recorded. In case of a disagreement of the jury, the party who demanded the jury in the first instance shall pay to the clerk . . . the *per diem* of the jurors at the time of the discharge of the jury or within such time as the court may order. All sums so paid shall be taxed and allowed as part of the costs of the party paying the same, if judgment be finally rendered in his favor. In all cases, both at law and in equity, either party shall have the right to submit all issues of fact to a jury."

It seems to be the view of counsel for appellant that this statute established the right of trial by jury in

equity causes, notwithstanding the contrary decisions of the Supreme Court upon that subject following the passage of that statute. There is no point to this contention. The law as stated by this court prior to the adoption of the Constitution was the law of the land, and it is absurd to assume that that law can be changed by any declaration of the court subsequently made. Nor is the position of appellant at all improved by the equally absurd assumption that this court, in passing directly upon so important a question, presented to it by some of the ablest counsel in the state, and functioning through judges whose learning is well known to most of the members of this bar, overlooked or ignored, or whatever excuse may be assigned, provisions of the statute directly bearing upon the subject under consideration. It is true that neither of these decisions refer by number to this particular statute, but the most casual and uncritical examination of these opinions will disclose that this statute was in the minds of the writers.

In *Taggart Mercantile Co.* v. *Clack,* the opinion reads:

"In such a case the court is at liberty to disregard the verdict and findings of the jury."

The court could not disregard the verdict and findings of a jury unless there was such verdict to disregard, and the court evidently had in mind the statute requiring the submission of issues to a jury. This same language is quoted in *Dooley* v. *Burlington Gold Mining Co.* by Justice CAMPBELL, and incorporated into and made a part of that opinion. Evidently this so called "overlooked" piece of legislation was present in the minds of both these justices writing these opinions, and the opinions are directly responsive to the provisions of that statute. Not only do these decisions of the Supreme Court constitute the law of the territory as it then was, but the conclusion

which the court arrived at was the only possible conclusion which it could have reached giving effect to the organic law and without assuming to overrule the Supreme Court of the United States, and disregard every precedent directly bearing upon the subject.

The territory of Montana had a statute which was not materially different from the statute of Arizona. The organic law which governed the territory of Montana was substantially the same as the organic law of Arizona. This Montana statute provided that—

"In all cases issues of fact must be tried by a jury (except actions which involve a settlement of accounts between parties) unless a jury shall be waived by the parties." Laws 1877, p. 98.

This exception contained in it (of actions which involve a settlement of accounts between parties), a single class of equity cases, indicates that other causes in equity are included. Besides it in terms includes issues of fact in all cases. This statute was first before the courts of Montana in *Kleinschmidt* v. *Dunphy*, 1 Mont. 118, in which the Supreme Court says:

"We have seen that the Civil Practice Act has provided the same manner of disposing of issues of fact in all civil cases, whether in law or in equity. It follows, from what we have said, that the legislative assembly has the same power as Congress, within the limitations of the grant of power to it contained in the acts of Congress and the Constitution. Could Congress confer the right of trial by jury of issues of fact in causes in equity in the federal courts? . . . We think it could. We find nothing in the Constitution preventing the exercise of such power. Hence, we conclude that the legislative assembly also possesses the power, under the organic act, as being a subject of rightful legislation. . . . We conclude, then, that the act in question, so far as it relates to trial of issues of fact in causes in equity, is constitutional and valid."

Upon appeal the Supreme Court of the United States reversed this decision notwithstanding this act, and held that in equity cases the verdict of the jury is only advisory. *Dunphy* v. *Kleinschmidt*, 11 Wall. 610, 20 L. Ed. 223 (see, also, Rose's U. S. Notes).

In *Gallagher* v. *Basey*, 1 Mont. 457, the same question was involved, and the court, in conformity with the decision of the United States Supreme Court just cited, held that notwithstanding this statute the trial court was at liberty to disregard the findings of a jury in an equity case, and that this statute, if intended by the legislature to make the findings of a jury conclusive upon the court, would be in conflict with the organic act, which guaranteed to the people of Montana the granting of equitable relief in accordance with the ancient rules and practices of courts of chancery.

This case also was before the Supreme Court of the United States. *Basey* v. *Gallagher*, 20 Wall. 670, 22 L. Ed. 452. That court took occasion to say concerning this statute that—

"That statute is substantially a copy of the statute of California . . . and it was frequently held by the Supreme Court of that state, that the provision in that act requiring issues of fact to be tried by a jury, . . . did not require the court below to regard as conclusive the findings of a jury in an equity case."

It would be difficult for language to be more explicit or definite.

The statute of California of 1850 so referred to is as follows:

"Paragraph 136, chapter 10 of an act to regulate proceedings in civil cases, etc.
"Whenever there shall be an issue of fact, it must be tried by a jury, unless a jury trial be waived."

Later on the Supreme Court of Montana had occasion to affirm its construction of this statute in *Davidson* v. *Davidson,* 52 Mont. 441, 158 Pac. 680.

This Montana statute, which became a part of the law of that territory in 1869, seems very likely to have been taken from California. At all events it is nearly identical with a statute upon the same subject adopted in California in 1850, and was the subject of opinion and comment several times in the Supreme Court of that state. In *Still* v. *Saunders,* 8 Cal. 281, the court says:

"It has been repeatedly held that in chancery cases the parties were not entitled to a jury. *Walker* v. *Sedgwick,* 5 Cal. 192."

In *Brewster* v. *Bours,* 8 Cal. 501, the court, having under consideration the same provision of the statute, makes this observation:

"The mode of proceeding contended for by the appellants is, we think, impracticable; that in complicated cases, it would be next to impossible to find a jury capable of passing, understandingly, upon the various questions of fact involved, without the aid of special issues, and that the statute contemplates, that in all such cases, special issues should be framed under the direction of the court, according to the long established rules of chancery practice."

But Montana was not the only territory having an organic act similar to Arizona's in which this question arose. In *Idaho & Oregon Land Co.* v. *Bradbury,* 132 U. S. 509, 33 L. Ed. 433, 10 Sup. Ct. Rep. 177 (see, also, Rose's U. S. Notes), after referring to *Basey* v. *Gallagher,* the opinion goes on to say that the Montana statute was similar to the Idaho Code of Civil Procedure under consideration in that case, and then adds:

"The action of the district court of the territory of Idaho, therefore, in setting aside the general verdict, and substituting its own findings of fact for the special

findings of the jury, was a lawful exercise of its equitable jurisdiction, the propriety of which cannot be reviewed by this court; and it is quite immaterial whether the general verdict was consistent with the findings of the jury, or with the evidence introduced at the trial.''

The court there based the propriety of setting aside the findings of the jury upon the ground that it is ''a lawful exercise of its equitable jurisdiction,'' a jurisdiction which was vested by the organic act of Arizona in the courts of this territory.

The same question was before the Supreme Court of the United States in *Perego* v. *Dodge,* 163 U. S. 160, 41 L. Ed. 113, 16 Sup. Ct. Rep. 971 (see, also, Rose's U. S. Notes), though arising under a different form of statute, nevertheless involving the right of a territory under its organic act.

All these decisions of the Supreme Court of the United States which were conclusive and binding upon the territorial courts were cited in *Taggart Mercantile Co.* v. *Clack,* as the basis of that opinion. These cases limited and defined the effect of the statutes of the territory of Arizona, including the one above referred to as paragraph 1389 of the Code of 1901, and determined beyond question that when our Constitution was adopted, trial by jury was not only not a right incident to equity, but the courts were expressly required by the organic act to exercise chancery jurisdiction in appropriate cases, which required the court to base its decree upon the facts as it found them, unaffected by the findings of a jury, any territorial legislation to the contrary notwithstanding.

The act of the legislature, chapter 125 above quoted, is not in conflict, but is in complete harmony with, the Constitution, by which the courts are expressly invested with equity jurisdiction in terms not substantially unlike the provisions of the antecedent organic

law of the territory. Equity jurisdiction imposed by the Constitution means something more than the right to try after some sort of fashion those causes which formerly were the peculiar care of courts of chancery. If that were all intended, the Constitution would have made no distinction in civil actions. Instead, it preserved the classification of equity and law actions.

The distinction between law and equity lies in the remedy severally applied. It is only when there is "no adequate remedy at law" that equity will assume jurisdiction. The application of the remedy in equity depends upon the procedure by which it is reached. The acceptance as conclusive of a jury's verdict amounts in some cases to a denial of equitable remedies, and consequently the failure to exercise equity jurisdiction. 1 Pomeroy's Equity Jurisprudence, 116; *Brown* v. *Circuit Judge,* 75 Mich. 274, 13 Am. St. Rep. 438, 5 L. R. A. 226, 42 N. W. 827; *Davidson* v. *Davidson,* 52 Mont. 441, 158 Pac. 680; *Still* v. *Saunders,* 8 Cal. 281.

Equity jurisdiction is defined as the power to hear certain kinds and classes of civil causes, according to the principles, methods, and procedure adopted by a court of chancery, and to decide them in accordance with the doctrines and rules of equity jurisprudence. Pomeroy's Equity Jurisprudence, pars. 116 and 130; *Brown* v. *Circuit Judge,* 75 Mich. 274, 13 Am. St. Rep. 438, 5 L. R. A. 226, 42 N. W. 827.

"Juries cannot devise specific remedies, or safely deal with complicated interests, or with relief given in successive stages, or adjusted to varying conditions. Theory amounts to nothing in the history of jurisprudence. The system of chancery jurisprudence has been developed as carefully and as judiciously as any part of the legal system, and the judicial power includes it, and always must include it. Any change which transfers the power that belongs

to a judge to a jury, or to any other person or body, is as plain a violation of the Constitution as one which should give the courts executive or legislative power vested elsewhere.'' *Brown* v. *Circuit Judge,* 75 Mich. 274, 13 Am. St. Rep. 438, 5 L. R. A. 226, 42 N. W. 827; *Carpentier* v. *Montgomery,* 13 Wall. 480, 20 L. Ed. 698 (see, also, Rose's' U. S. Notes).

''Nature has made some laws, and these it is difficult to repeal. No one can fail to see the relation which exists between trial by jury and compensation in damages for every injury. One is a necessary consequence of the other.

''Could a jury adjust the equities and counter equities in a complicated case, and mete out the precise relief which justice might require? There is a moral impossibility in this. What twelve men would ever agree upon the terms of an equity decree?

''Equally impracticable would it be for juries to find special verdicts in such cases embracing the details indispensable to be considered in making up the judgment of the court.'' *Wooden* v. *Waffle,* 6 How. Pr. (N. Y.) 145.

We conclude that the statute in question is not only not in violation of the Constitution, but quite in accord with it, calculated to render effective the jurisdiction with which the Constitution has invested the courts.

The case of *Donahue* v. *Babbitt, ante,* p. 542, 227 Pac. 995, recently decided by this court, involves some of the same questions affected by this opinion, which was written some months earlier, but in accord with the views expressed there.

The judgment is affirmed.