LESER *v.* SMITH.

1. APPEAL AND ERROR—EQUITY—SUPREME COURT HEARS CASES DE NOVO—FINDINGS OF TRIAL JUDGE.

   The Supreme Court hears chancery cases *de novo*, aided but not controlled by the findings of fact of the trial judge, who may in turn be aided but not controlled by the findings of a jury on pure questions of fact.

2. EQUITY—SUBMISSION OF FACTS TO JURY—SINGLE ISSUES.

   When the judge desires the aid of a jury in a chancery case he should submit to them single issues of pure fact, and the method of submitting the case under a general charge cannot be approved.

3. FRAUD—PRESUMPTION—PREPONDERANCE OF EVIDENCE.

   Fraud is never presumed, but must be established by a preponderance of the evidence.

On right of purchaser of land to rely on representations by vendor as to quality or condition of soil, see note in L. R. A. 1917C. 273.

4. EXCHANGE OF PROPERTY—FRAUD—BURDEN OF PROOF.

On appeal from a decree setting aside an exchange of real estate on the ground of defendants' fraud, where, upon examination of the record it clearly appears that plaintiff has failed to sustain the burden of proof cast upon him by the law, the decree of the court below will be reversed and the bill dismissed.

Appeal from Bay; Houghton (Samuel G.), J. Submitted November 16, 1920. (Docket No. 81.) Decided December 21, 1920.

Bill by Edward W. Leser against David T. Smith and others to set aside an exchange of real estate on the ground of fraud. From a decree for plaintiff, defendants appeal. Reversed, and bill dismissed.

*Collins & Thompson,* for plaintiff.

*B. J. Henderson* and *W. B. Henry,* for defendants.

Plaintiff was owner of a store building in Bay City in which he conducted a grocery and meat business. Defendant Smith is a doctor residing at Omer; he owned an 80-acre farm in Au Gres township, Arenac county, hereafter called the "Smith 80." Defendant Burnside is a hardware merchant at Turner and owned an 80 adjoining the Smith 80. It will hereafter be called the "Burnside 80." The Smith 80 had buildings upon it; the Burnside 80 had none. Smith and Burnside had agreed to dispose of the two 80's together and title to the Burnside 80 was placed in Doctor Smith. Plaintiff's building was incumbered for $3,000. He made a trade of the building and stock for the two 80's. In the trade his building was put in at $8,000 and the stock at $2,500. The farms were put in at $12,000, and plaintiff gave a mortgage for $4,500 on them to pay the mortgage on the store building and the "boot" money. This bill is filed to set

aside this trade on the grounds of fraud. Plaintiff's claim is thus stated by his counsel:

"Plaintiff in the court below sought to set aside the transaction involved on the ground of fraud and misrepresentation on the part of the defendants, and claimed in his bill of complaint that he was ignorant of farms and knew nothing of the kinds of soil or what they would produce.

"He claims that involved in the fraud, Paul R. Dinsmore represented that he was the agent of the defendants Garfield A. Burnside and David T. Smith to sell the land, and the said Dinsmore represented to him:

"1st. That the property was 160 acres all cleared, with good buildings.

"2d. That the soil was the best, A No. 1, for the raising of all kinds of crops.

"3d. That it was heavy clay soil and would produce good crops, wheat, corn, oats and sugar beets.

"4th. That it was worth the sum of $12,000.

"He further claims that the defendant Garfield A. Burnside drove him and his brother-in-law from Turner to the farm.

"1st. That he took them in a round about way over the best farm lands.

"2d. That he misrepresented the kind and condition of the farm house.

"3d. That he took them back to the barn where the crops looked good, and said the whole farm is as good as this, but we must hurry up and get back.

"4th. That he took them to a point on the Burnside 80 where sugar beets were planted and said the entire 80 was all clay loam.

"5th. That he represented that the whole 80 was the best kind of land, and plaintiff would be getting a bargain.

"6th. That the house cost about $3,000 to build.

"7th. That the 160 acres was worth about $12,000."

The case was tried by a jury as ordinary actions at law are tried. There was no submission to the jury of single questions of fact, but the case under a general charge was submitted to the jury upon the broad question of whether plaintiff should prevail. The jury

rendered a general verdict for the plaintiff. Thereupon defendants' counsel filed a motion for a decree notwithstanding the verdict and in support of such motion filed affidavits setting up some of the argument of plaintiff's counsel which it was claimed was prejudicial to defendants. The facts set up in these affidavits were not denied; the arguments there detailed were of that character which has many times met the condemnation of this court. The trial judge filed a short opinion overruling this motion. After stating that the case involved sharp questions of fact and was submitted to the jury at the request of plaintiff's counsel, he said:

"The jury found that there was fraud in the transaction, and since the findings of the jury in a case of this nature are only advisory, but the question being one clearly of fact, and the jury having found against the defendant, and the court since having been requested to find for the defendant, notwithstanding the verdict of the jury, the court feels that the question of fact is one that the jury should determine, and having been so determined by it, the court should not reach a different conclusion on the facts. The findings of the jury will be considered as a determination of the facts in the case, and a decree may be made accordingly."

The trial judge nowhere in this opinion expressed his personal views of the facts either as aided by the finding of the jury or independent thereof. A decree conformable to the prayer of the bill was entered and defendants appeal.

FELLOWS, J. (*after stating the facts*). This court hears chancery cases *de novo*, aided but not controlled by the findings of fact of the trial judge, who may in turn be aided but not controlled by the findings of a jury on pure questions of fact. In the case of *Brown* v. *Kalamazoo Circuit Judge*, 75 Mich. 274 (5 L. R. A.

212—Mich.—36.

226, 13 Am. St. Rep. 438), this court in holding an act invalid which provided for a trial by jury in chancery cases as matter of right, and making the verdict a finality, pointed out quite fully the rights of party litigants in equity cases. It was there said:

"The right to have equity controversies dealt with by equitable methods is as sacred as the right of trial by jury. Whatever may be the machinery for gathering testimony or enforcing decrees, the facts and the law must be decided together; and when a chancellor desires to have the aid of a jury to find out how facts appear to such unprofessional men, it can only be done by submitting single issues of pure fact, and they cannot foreclose him in his conclusions unless they convince his judgment."

As has already been noted, single questions of pure fact were not submitted to the jury, nor has the chancellor expressed his personal views upon the facts aided or unaided by the verdict. The proceedings are irregular, but the testimony is all before us, and as the final triers of the facts in chancery cases we shall proceed to dispose of the case giving such weight to the verdict of the jury as under all the circumstances it is entitled to. By so doing we are not to be understood as approving the method of procedure in the instant case or making it a guide for future cases.

The parties and their witnesses are not in accord on many of the material questions of fact. Some of the claims of plaintiff do not find support in the proofs; upon many of them there is direct conflict between the parties. The problem before us is to determine whether plaintiff has sustained the burden of proof, has established the fraud he alleges as the basis of his right to recover, because fraud is never presumed, and must be established by a preponderance of the evidence.

Before plaintiff engaged in his present business he had been a florist and had owned 10 acres of clay land.

We think the testimony shows that he was not a practical farmer, but that he knew the difference between sand and clay soil and could tell such difference when he saw the soils. A disinterested witness who showed him a farm near West Branch gives testimony tending. to show that plaintiff was quite versed in soils and readily picked out the best portion of the farm under observation. While plaintiff claims that he was doing well in his business and that the state of his health was the cause of his desire to trade for a farm, we are satisfied from the testimony of disinterested witnesses who sold him goods and dealt with him that he was not making money in the business and was anxious to get out of it. The stock was considerable lower than when he purchased it; he owed $3,000 on his building, and within a few cents of $900 to his commercial creditors.

Plaintiff claims he had not listed his property with Mr. Axe, a real estate dealer in Bay City, and claimed Axe, whom he made a defendant but took no relief against, was one of the parties who participated in the fraudulent transaction; but he admits that after the deal was closed he gave Axe his note for $300, which Axe testifies was the agreed commission, upon which note plaintiff had paid $25, and had suffered a judgment in justice's court to pass against him for the balance and had then appealed the case to the circuit court. It does appear that plaintiff examined several farms which Axe claims to have called to his attention, but no deal was consummated as to any of them. The circumstances surrounding the transaction, together with the testimony of the witnesses, are quite persuasive that Axe brought the parties together in the regular way of a real estate broker, and as the agent of the plaintiff.

Plaintiff accompanied by his brother-in-law, a Mr. Foulke, went up to Turner to look over the farms.

Plaintiff claims that his sister was insistent that he make the trip, that he did not want to go because "I thought they were a bunch of crooks and I didn't want to go with them," although in other parts of his testimony he says he relied on all they told him. Plaintiff and Mr. Foulke arrived at Turner about 2 o'clock in the afternoon and were taken by Mr. Burnside to see the farms. There is no testimony that they were taken in a round about way. We think it should also be stated at this point that plaintiff says that the 160 was cleared land and was properly fenced; it also appears that plaintiff has no complaint about the house. It was a good farm house, comparatively new, and would at present prices cost around $4,000 to build. There were two barns or two parts of the same barn, one in good condition, the other dilapidated. Back of the barn there were some crops growing. One of the few facts upon which the witnesses are in substantial accord is that this land back of the barn is sandy and the poorest of any on the Smith 80. The parties looked this ground and the crops over. Plaintiff claims that Mr. Burnside told him that "around here the soil is a little light but the rest of it is all good, A No. 1, land." Mr. Foulke gives the following testimony as to this conversation:

"*Q.* He said it was all just like that, that you saw there?

"*A.* Yes, sir.

"*Q.* He said the whole place was the same kind of soil that you saw back of the barn?

"*A.* He said it's all clay loam.

"*Q.* Just like this back of the barn?

"*A.* Yes, sir.

"*Q.* It was all just like that you were looking at, is that right?

"*A.* Yes, sir."

Mr. Burnside denies making any fraudulent representations as to the character of the soil or its value.

He says he told them that if the farm was properly worked it would produce good crops, that he was there "to show them this land, if there was any place they wanted to go, I would take them to it." Plaintiff and Mr. Foulke claim Mr. Burnside was constantly hurrying them to get back to Turner; Mr. Burnside denies this. He claims they made a full and complete examination of the farms, seeing both the good and bad parts of them; this they deny. They did spend the balance of the afternoon there and returned to Turner time enough to get their supper and return home on the evening train. After this trip the deal was consummated.

The parties themselves are in conflict as to whether representations were made, and they are likewise in conflict as to the character of the soil, and the value of the properties. The witnesses called by the parties are likewise in conflict as to the character of the soil and the value of the properties. Plaintiff produced three witnesses who live in the neighborhood of the Smith and Burnside 80's. They all fix the value of the Smith 80 at $3,000. Two of them fix the value of the Burnside 80 at $10 an acre, and the other one does not fix any value on it. They all depreciate the soil of both 80's. On the other hand, defendants produce three witnesses from this neighborhood who testify favorably to the character of the soil. Their estimates of value of the Smith 80 are: (1) $90 per acre, (2) $80 to $90 per acre, (3) $6,500 to $7,000; of the Burnside 80: (1) $30 to $40 per acre, (2) $40 per acre, (3) $25 to $30 per acre. Defendants also produced as a witness a man living in the neighborhood and who for many years owned the Smith 80. He gives testimony of abundant crops raised on both 80's and the fertility of the soil, and while he does not attempt to fix a value, he does testify that he sold the Smith 80 after the house had burned and before the present

one was built for $3,000. All of these witnesses come from the vicinage and appear equally credible.

Defendants also produce as witnesses two farmers who are directors in a bank in a near-by town. They looked over this property for their bank and appraised its value as the basis of a loan. They both fixed the value of the two 80's at $9,000 and so reported to their bank which took a loan on it. They testify to that value on the hearing. They appear to be fair and disinterested witnesses and not to have taken sides in this controversy. If it became necessary for us to fix a value of these premises their testimony in view of the conflicting testimony of the neighbors would be very impressive that they had fixed the value about right, and that these premises were worth the sum fixed by them.

Directly across the road from the Smith 80 is a farm of 120 acres owned by a Mr. Swanson. However much the neighbors disagree upon the questions of value and soil they join in the opinion that Mr. Swanson is a most excellent farmer and that his farm is in a high state of cultivation. The State tax commission had recently reviewed the assessed valuation of Au Gres township. It had fixed the value of the Swanson 120 acres at $5,000 and of the Smith 80 at $4,500. It also appeared that a bank in one of the near-by towns had loaned $1,400 on the Burnside 80.

Turning now to plaintiff's building in Bay City, we find a like conflict in the testimony as to its value. Plaintiff fixes its value at $8,000, the amount that it was put in in the trade. He called as witnesses two real estate dealers, one of whom fixed its value at $6,000, the other from $7,500 to $8,000. Defendants called three real estate dealers. One fixed the value at $5,000, another at $4,500, and the other at $4,300 to $4,500. The testimony is quite persuasive that each of the parties had "boosted" the value of his real

estate about $3,000 in making the trade. But we are not persuaded that defendants or any one connected with them made such representations as to the value of the farms as would amount to actionable fraud.

We have reviewed the testimony at considerable length, although we have by no means set it all out. It would not profit the parties or the profession so to do. Upon a careful examination of this record, we are clearly of the opinion that the plaintiff has not discharged the burden of proof which the law casts upon him. Entertaining this view it is our duty to put such view into force irrespective of the result in the court below or the method by which such result was reached.

The decree of the court below must be vacated and one here entered dismissing the bill. Defendants will recover costs of both courts.

MOORE, C. J., and STEERE, BROOKE, STONE, CLARK, BIRD, and SHARPE, JJ., concurred.