HILLIKER *v.* JEWEL OIL & GAS CO.*

1. APPEAL AND ERROR—MOTION TO DISMISS—EVIDENCE—FRAUD.
   On appeal from denial of motion to dismiss fraud count at close of plaintiff's case because evidence then introduced failed to establish claimed fraud, only evidence theretofore introduced may be considered, not evidence thereafter presented by defendant.*

2. FRAUD—PRESUMPTION—INFERENCES.
   Fraud is never presumed, and cannot be lightly inferred.

3. SAME—BURDEN OF PROOF.
   Burden of proving fraud is upon plaintiff.

4. SAME—EVIDENCE—INFERENCES—CORPORATIONS.
   In action for fraud in sale of stock in proposed oil and gas company, evidence that defendants promised to organize domestic corporation *held*, insufficient to sustain charge of fraud where corporation was in fact organized as Delaware corporation, misrepresentation was promissory in nature and not shown to have been a part of a scheme to defraud.

---

* See opinion on rehearing, *post*, 615.

Appeal from Muskegon; Vanderwerp (John), J. Submitted June 10, 1936. (Docket No. 50, Calendar No. 39,003.) Decided September 2, 1936. Rehearing opinion, *post*, 615.

Action by George A. Hilliker against Jewel Oil & Gas Company, a Delaware corporation, H. Bruce March, Frank J. Marxer and others for fraud in the sale of stock in a proposed corporation. From judgment for plaintiff against defendants March and Marxer, they appeal. Reversed.

*Irving H. Smith,* for plaintiff.

*George H. Cross,* for defendants.

Toy, J. Defendants Marxer and March appeal from a judgment entered against them and in favor of plaintiff in the sum of $639.56 in an action of assumpsit, containing a count for fraud. The case was tried by the court below without a jury, and judgment entered against appellants on the fraud count, the plaintiff having elected to proceed on that count.

On January 12, 1929, plaintiff, acting upon verbal representations made to him by one C. W. Garwood, claimed by plaintiff to be acting as agent for appellants and others engaged in promoting a proposed corporation to acquire oil and gas property and drill and operate wells thereon, and through written representations contained in a "prospectus" prepared by defendants and others interested with them, relating to such proposed corporation, was induced to subscribe for five shares in such proposed corporation, and for that purpose gave to said Garwood his check in the amount of $500 to cover the cost of same, which check was made payable to defendant Marxer as trustee.

At the close of plaintiff's case, counsel for defendants moved the court to dismiss the fraud count of the declaration for the stated reason that the evidence introduced established no cause of action under the claim of fraud. The motion was denied and appellants now claim such denial to have been error.

The fraudulent representations claimed by plaintiff were set forth in his declaration as follows:

"(a) That defendants were then organizing and would very shortly cause to be organized under the laws of the State of Michigan, a corporation to be known as the Jewel Oil & Gas Company, when in fact defendants were organizing and did in the months of October or November, 1929, organize said corporation, namely, the Jewel Oil & Gas Company, under the laws of the State of Delaware.

"(b) That plaintiff's subscription of said stock would not be deemed to be accepted by said corporation till upon the filing and recording of the certificate of incorporation in Michigan, and upon the subscription to $90,000 worth of the stock of said corporation.

"(c) That said directors already had procured subscriptions to said stock totaling $90,000 *or approximately* that much, and that it had one well in the Muskegon proven field, nearly completed, and that it had ascertained, and therefore knew it to be a fact that said well would produce oil in goodly quantities.

"(d) That said statements and representations and particularly the representation that defendants would issue to plaintiff said shares of stock upon the organization of said company were intentionally fraudulent and made for the purpose of inducing plaintiff to subscribe therefor and to pay the said $500 as aforesaid, it being the intention of defendants not to issue to plaintiff any stock as aforesaid."

The record discloses that in the presentation of the plaintiff's case in the court below, three witnesses were produced, who were: defendant Marxer, called for cross-examination under the statute;* Mr. Garwood, the stock salesman; and the plaintiff himself.

Garwood testified that he was employed to take stock subscriptions for the Jewel Oil & Gas Company and that "Mr. Turner, Mr. Marxer, and Mr. Noor and Mr. March employed me." He testified that he took plaintiff's subscription for stock and received his check which he turned over to defendant Marxer, the trustee. He testified that the promoters of the company were "Mr. Turner, Mr. Noor, Mr. Marxer, and Mr. March." On cross-examination Garwood testified:

"*Q.* Now in connection with getting his subscription did you tell him that there had already been procured $90,000 worth of subscriptions to stock?

"*A.* No, sir.

"*Q.* He alleges in his declaration that at that time you represented to him that there had already been procured subscriptions to said stock totaling $90,000 or approximately that much, did you tell him that?

"*A.* No, sir.

"*Q.* But you did know at that time that these parties, Mr. Turner and others, Mr. Marxer and Mr. Noor, had one well nearly completed?

"*A.* Yes, sir.

"*Q.* And you told him that and it was true?

"*A.* Yes, sir.

"*Q.* Was that the well that was being drilled by the Great Lakes Oil & Gas Company?

"*A.* That I don't know.

"*Q.* But you didn't tell him that they had $90,000 worth of stock issued that wasn't true?

---

* See 3 Comp. Laws 1929, § 14220.—Reporter.

"*A.* I knew that wasn't true.

"*Q.* And you didn't represent anything of that kind if it wasn't so?

"*A.* No, sir.   *   *   *

"*Q.* Now Mr. Garwood as far as you know did you make any false representations at all to Mr. Hilliker inducing him to sign this subscription list?

"*A.* Not that I know of.

"*Q.* Everything you told him was true as far as you know?

"*A.* Exactly. Relative to my conversation with Mr. Hilliker at the time I sold him this subscription to the Jewel, the whole story is on the subscription list. I cannot repeat the conversation. I read that to him, or he read it himself. It was to be a Michigan corporation."

Defendant Marxer, called by plaintiff, testified that he received the $500 paid by plaintiff and that such money was used by the Jewel Oil & Gas Company, a Delaware corporation, and that afterwards it went to the Cohassett Corporation, a Michigan corporation, formed to take over the Jewel Oil & Gas Company. He testified that the plaintiff was never issued any stock in the Jewel Oil & Gas Company, but gave no reason therefor. He testified that he had nothing to do with the promotion, but that Mr. Turner, a disbarred lawyer, was promoting it alone and that he, Marxer, was simply a trustee for the funds subscribed prior to incorporation; that after incorporation he was a stockholder and officer of both the aforementioned corporations.

The prospectus referred to was in reality a subscription list, and was as follows:

"We, the undersigned, hereby mutually agree, each with the others, and the corporation herein mentioned, severally and not jointly to take the number of shares set opposite our respective names

hereunto of the stock of a corporation to be organized under the laws of the State of Michigan under the name of Jewel Oil & Gas Company (or other proper name to be chosen), for the purpose of purchasing oil and gas leases and drilling for oil and gas and selling the same, and for the purpose of purchasing and holding five-sevenths of the capital stock of the Great Lakes Oil & Gas Company, a Michigan corporation, holding and owning seven acres of leases in the heart of the proven Muskegon-Daniloff field, so-called, which corporation has sufficient funds to drill and complete one well on which operations have already begun; such corporation to have an authorized capital stock of $150,000, consisting of 1,500 shares at $100 each, which stock is to be all capital stock and nonassessable; and we do hereby further severally agree to pay the par amount of such shares of stock to Frank J. Marxer, trustee for such corporation to be formed, in cash at the time of the signing of this subscription list.

"The subscriptions hereby made shall be deemed to be accepted to said corporation immediately upon the filing and recording of the certificate of incorporation thereof in the manner prescribed by law; and such incorporation shall take place at the time when $125,000 worth of stock has been subscribed.

"It is understood and agreed that the certificate of such incorporation may be signed by any three or more of the subscribers hereunto, and that such certificate may contain such provisions not inconsistent herewith as shall be deemed advisable by the incorporators.

"Separate copies of this agreement may be signed with the same force and effect as though all of the signatures were appended to one original instrument.

"The company will not be responsible for any checks made payable to anyone other than Frank J. Marxer, trustee."

While there was much testimony introduced in defense, some of which plaintiff contends shows definite fraud upon the part of defendants, we cannot, in disposing of the question now before us, consider it, for we must decide the instant point on the evidence before the court at the close of plaintiff's case.

Plaintiff's evidence may have proved a case in assumpsit of "money had and received" but plaintiff waived this count and elected to proceed on the fraud count.

We then have the question did plaintiff prove defendants to have been guilty of fraud.

Fraud is never presumed, and cannot be lightly inferred. The burden of proving it is upon plaintiff. *Kirby* v. *Gibson Refrigerator Co.*, 274 Mich. 395 (103 A. L. R. 1343); *Baker* v. *Frischkorn*, 271 Mich. 485; *Achenbach* v. *Mears*, 272 Mich. 74; *Leser* v. *Smith*, 212 Mich. 558; *Van Auker* v. *Toan*, 204 Mich. 184.

The only representation proved by plaintiff to be untrue, as will be noted from the foregoing narrated testimony and from the "prospectus," was that of the promise to organize a Michigan corporation and deliver him stock therein. But this was not a representation of an existing fact. It was promissory in nature. The evidence does not show it to be a part of a scheme to defraud. Mere failure to incorporate as promised, where not shown to be a part of a scheme to defraud is not sufficient from which to infer fraud. *Taepke* v. *Globe Finance Corp.*, 265 Mich. 280; *Dobson* v. *Whitker*, 242 Mich. 308; *Kent* v. *Matheson*, 276 Mich. 316.

The motion of appellants should have been granted.

In view of our holding it is unnecessary to consider the other questions submitted.

The judgment is reversed and the cause remanded for entry of judgment for defendants in accordance with their stated motion. Costs of both courts to appellants.

NORTH, C. J., and FEAD, WIEST, BUTZEL, BUSHNELL, and SHARPE, JJ., concurred. POTTER, J., did not sit.