ABNER A. WOLF, INC. *v.* WALCH

1. EQUITY—JUDGMENT—JURY—CONSTITUTIONAL LAW—EQUITY JURISDICTION.

The right and duty of the trial court to hear and determine an equity case to decretal judgment, with or without any advisory jury, is constitutionally sound law and, unlike the Federal practice, the Michigan Supreme Court determines properly under the Michigan Constitution the extent of equity's jurisdiction, duties and powers.

---

REFERENCE FOR POINTS IN HEADNOTES

[1, 2] 27 Am Jur 2d, Equity § 238 *et seq.*

2. EQUITY—DISCRETION—CONSTITUTIONAL LAW—JURY.

   Michigan's equity practice calls up the application of sound judicial discretion with no constitutional right of sequence of trial or jury involved, whenever the jurisdiction of equity is unquestioned.

Appeal from Court of Appeals, Division 3, Fitzgerald, P. J., and R. B. Burns and Bronson, JJ., reversing and remanding Mescosta, Harold Van Domelen, J. Submitted May 6, 1971. (No. 22 April Term 1971, Docket No. 52,826.) Decided July 7, 1971.

21 Mich App 483 reversed in part.

Complaint by Abner A. Wolf, Inc., against Desmer G. Walch and Leona R. Walch for foreclosure of real estate and chattel mortgages. Counterclaim for damages for fraud, breach of contract and wrongful interference with defendants' business. Judgment of no cause of action as to both parties. Plaintiff appealed to the Court of Appeals. Reversed and remanded. Defendants appeal. Reversed in part and remanded for further proceedings.

*Schmidt, Smith & Howlett,* for plaintiff.

*Frederick D. McDonald,* for defendants.

BLACK, J. (*for remand with instructions*). The profession knows generally that calendared appeals brought here are precedently and rotatively assigned to the respective Justices; also that it is the initial responsibility of each such assignee to draft and distribute to the Justices a proposed opinion of each appeal thus assigned to him. With respect to that system, it has been my regular practice since

1959 to submit to the Brethren old-fashioned hackle-smoothers headed "Per Curiam", each struck off with steady employment of the plural pronoun "we". Usually, but far from always, this soothing procedure has worked out with majority satisfaction. *Carman* v. *Secretary of State* (1971), 384 Mich 443, 447 is the most recent prominent example. This case of *Wolf* v. *Walch* now becomes one of the exceptions.

The ensuing opinion—in form *per curiam* and presented in unitary grammatics—was submitted to the Justices May 14 last. With it went a somewhat lengthy memorandum explaining why I felt no need for reference to *Beacon Theatres* v. *Westover* (1959), 359 US 500 (79 S Ct 948, 3 L Ed 2d 988) and the progeny thereof. The memorandum advised:

"In preparing the opinion I decided purposely to omit reference to these cases [*Beacon et al.*], figuring that the profession already comprehends fully the difference between the congressionally controlled jurisdiction of the lower courts of the Federal system (under art 3, US Const) and the jurisdiction which, by *our* Constitution, has from 1850 beginning been vested with what we know today as Michigan's 'one Court of Justice'. All this last appears with clarity, both in the opinion of the *Brown Case* [75 Mich 274] and in the lengthy opinion on application for rehearing of the *Blodgett Case* [115 Mich 160, 169].

"The Supreme Court in the *Beacon Theatres Case* dealt with rights under the Federal declaratory judgment act and, most recently (*Ross* v. *Bernhard*, 396 US 531, 24 L Ed 2d 729), with the right to a demanded jury trial of a stockholder's derivative action—both under the 7th Amendment.

"If three or four members of the Court deem it needful that these fundamentals require expatiation,

I will be glad to add a pedantic paragraph, providing many interesting illustrations of professorial theory gone mad in the face of the people's grant of and duty to exercise the judicial power which, starting definitely with the *Brown Case,* has been known pretty well."[1]

Sadly however, I find that the May 14 draft has stimulated no paeans or hosannahs. That being the present state of *Wolf's* affairs, I have amended the May 14 draft so as to switch pronouns and structure into the area of the first person singular, and to submit the new draft as a separate contribution to the collection plate. This should prod the writing of whatever opinion may be desired by our majority, thereupon bringing this May-submitted cause to due decision.

My new and now individual opinion of *Wolf* v. *Walch* follows. It is submitted to the Brethren this 3rd day of July, 1971.

Plaintiff instituted this action to foreclose a real estate mortgage and a chattel mortgage, both executed by defendants to secure payment of a running account owing for merchandise sold and delivered to defendants' retail stores. The complaint alleged a balance owing of approximately $61,000. Defendants answered with allegation that the mortgages sought to be foreclosed had been paid in full and, by counterclaim alleging fraud, breach of contract and "willful and wrongful interference with defendants' just rights and business", sought damages against plaintiff in the sum of $200,000. With their answer and counterclaim defendants filed a general and all-inclusive demand for jury trial.

---

[1] I have now added Division "Third" to the previous draft, fulfilling in part the promise of such a "pedantic paragraph". It appears *post* at p 265.

Plaintiff moved promptly to strike the demand. That motion was denied at pretrial; "there is a jury question in regard to the counterclaim at least."[2] Trial of all issues presented by the pleadings went ahead before the jury. The jury was told to bring in a general verdict only, for the plaintiff, or for the defendants, or that "neither one of them is entitled to anything". Its verdict was "no cause for action as to both the claim and counterclaim". Plaintiff thereupon moved to "vacate the purported jury verdict of no cause for action as to the claim of the plaintiff against the defendant", and for entry of a decretal judgment of foreclosure against defendants with judicial finding of a secured balance owing it in the sum of $55,421.42. Its primary reason offered in support was:

"The issues raised by the amended foreclosure complaint and the amended answer thereto are equitable in nature (MSA 27A.3180) and are for non-jury determination by the court. The jury was permitted to hear evidence concerning the amended complaint for foreclosure along with defendants' evidence as to the amended counterclaim only as a matter of convenience, subject to objection of plaintiff and plaintiff's motion for separate non-jury trial thereof. Said verdict is not binding on the court or plaintiff under Rule 509.4 because plaintiff did not consent to jury trial as to the complaint for foreclosure."

For further factual and procedural details see the opinion of Division 3, resulting in reversal and

---

[2] The trial judge explained his ruling, the jury being absent, at the beginning of the trial:

"Therefore, it's the opinion of the court that the expeditious administration of justice requires that this matter be tried before the jury in its entirety and before the matter goes to the jury the court will sort out the legal issues and retain those for decision of the court and the factual issues which are properly for the jury will be presented to the jury for decision."

remand for new trial (21 Mich App 483, 489). The Court granted defendants' application for leave to appeal (383 Mich 798), partly to review the merits *de novo* and, more importantly, to consider the propriety of ordering and conducting a single trial before a jury, selected and instructed to bring in a general verdict only; the action in the first place being purely equitable and there having been no determination or suggestion that the jury's function would, under GCR 1963, 509.4, be that of an adviser only. For reference to the beginning basis of our concern, see chapter 31 of the Revised Judicature Act of 1961, particularly §§ 3101 and 3180 MCLA §§ 600.3101, 600.3180 (Stat Ann 1962 Rev §§ 27A. 3101, 27A.3180).[3]

*First:* The original edition of Pomeroy's "Treatise on Equity Jurisprudence" was published in 1881. The author at that time warned the profession forcefully that what then was termed the "Reformed Procedure" (recognized loosely today as the "union of law and equity", the "blended procedure", or the "procedural merger") would unless controlled result inevitably in the gradual suppression and final disappearance of equitable principles and doctrines and the supplanting thereof "by the more inflexible and arbitrary rules of the law; until in time equity would practically cease to be a distinctive part of the national jurisprudence."[4]

---

[3] These sections are but reinforcers of equity jurisdiction.

Section 3101 reads: "The circuit courts have jurisdiction to foreclose mortgages on real estate and land contracts."

Section 3180 reads: "Actions under this chapter are equitable in nature."

[4] See the second and succeeding paragraphs of the first preface of Pomeroy, appearing as it does in all editions, and note his reference to the manner in which Parliament guarded (and yet guards) against the domination of equity by law. In *Spoon-Shacket Company, Inc.,* v. *Oakland County* (1959), 356 Mich 151, where law was arrayed against equity, five of us found occasion to apply the same safeguards. There it definitely appeared that the defendant county through error

It cannot be doubted that Pomeroy's then newly heralded alert came to the attention of this Court when, in 1889 (*Brown* v. *Kalamazoo Circuit Judge,* 75 Mich 274), it was shown by petition for mandamus that one of the parties to an equitable action (brought to set aside a deed) had successfully demanded a jury trial of the framed issue *with result that the jury's verdict became the foundation for an entered decree in favor of the complainant.* Consider that part of the opinion of Justice CAMP-BELL, writing for a unanimous Court, where (p 284) it was observed trenchantly that, "The right to have equity controversies dealt with by equitable methods is as sacred as the right of trial by jury" and then ruled (p 285):

"Juries cannot devise specific remedies, or safely deal with complicated interests, or with relief given in successive stages, or adjusted to varying conditions. Theory amounts to nothing in the history of jurisprudence. The system of chancery jurisprudence has been developed as carefully and as judiciously as any part of the legal system, and the judicial power includes it, and always must include it. Any change which transfers the power that belongs to a judge to a jury, or to any other person or body, is as plain a violation of the Constitution as one which should give the courts executive or legislative power vested elsewhere. The cognizance of equitable questions belongs to the judiciary as a part of the judicial power, and under our Constitution must remain vested where it always has been vested heretofore."

*Leser* v. *Smith* (1920), 212 Mich 558, procedurally is much like the case at bar. By his bill the plaintiff

---

had assessed a number of the plaintiff's subdivided lots some ten times their value. Equity provided relief as against proof that the plaintiffs had failed to comply with statutory requirement that they appear before the board of review for correction of such erroneous assessments.

sought to set aside an exchange of real estate for fraud. A jury was impaneled and the case was tried "as ordinary actions at law are tried". The jury returned a general verdict for plaintiff. Justice FELLOWS, writing for the Court, opened review this way (pp 561, 562):

"This court hears chancery cases *de novo,* aided but not controlled by the findings of fact of the trial judge, who may in turn be aided but not controlled by the findings of a jury on pure questions of fact. In the case of *Brown* v. *Kalamazoo Circuit Judge* [1889], 75 Mich 274 (5 L.R.A. 226, 13 Am.St.Rep. 438), this court in holding an act invalid which provided for a trial by jury in chancery cases as matter of right, and making the verdict a finality, pointed out quite fully the rights of party litigants in equity cases. It was there said:

" 'The right to have equity controversies dealt with by equitable methods is as sacred as the right of trial by jury. Whatever may be the machinery for gathering testimony or enforcing decrees, the facts and the law must be decided together; and when a chancellor desires to have the aid of a jury to find out how facts appear to such unprofessional men, it can only be done by submitting single issues of pure fact, and they cannot foreclose him in his conclusions unless they convince his judgment.'

"As has already been noted, single questions of pure fact were not submitted to the jury, nor has the chancellor expressed his personal views upon the facts aided or unaided by the verdict. The proceedings are irregular, but the testimony is all before us, and as the final triers of the facts in chancery cases we shall proceed to dispose of the case giving such weight to the verdict of the jury as under all the circumstances it is entitled to. By so doing we are not to be understood as approving the method of procedure in the instant case or making it a guide for future cases."

The writer, recalling personal participation in the early meetings and deliberations of the Joint Committee on Civil Procedure of 1958–1962, has yet in mind Pomeroy's warning. Honigman and Hawkins have recorded the fact and the point thereof in their Michigan Court Rules Annotated (vol 1, pp 9, 11):

"These rules are written to abolish, as far as possible, the *procedural* distinctions between law and equity. No attempt has been made to alter the substantive differences between law and equity. However, Professor Pomeroy observed, in the preface to the first edition of Pomeroy's Equity Jurisprudence (1881), that under such unified procedure 'The tendency * * * has plainly and steadily been towards the giving an undue prominence and superiority to purely legal rules, and the ignoring, forgetting, or suppression of equitable notions.' The adoption of these rules is not to be construed as approving of this tendency. On the contrary, Professor Pomeroy's words are to be taken as a warning so that we may avoid the consequences he describes. Only procedural distinctions are abolished or minimized by this set of rules.

\* \* \*

"(1) Most important, the distinctions between law and equity must continue to be recognized for the purpose of preserving constitutional rights to trial by jury in legal matters and trial by court in equity matters. *Brown* v. *Kalamazoo Circuit Judge,* (1889), 75 Mich 274, 42 NW 827.

"(2) The substantive elements of the cause of action—that is, the facts which must be proved to establish a claim or defense—and the kind of remedy the court can give must still be determined by reference to the substantive law of the actions in law and equity *as they previously existed."* (Last emphasis supplied by present writer.)

As the deliberations of the Joint Committee progressed, the advisability of uniting law and equity *procedure* came to debate. Accessory thereto was the alleged and denied right to a jury trial of a specific issue or issues of fact where, in a typical chancery action, the court must retain the invoked jurisdiction for the purpose of performing equity's traditional aim, that of granting complete relief by adjudging in one action the rights and duties of all of the parties which *really grow out of or are connected with the subject matter of that action.*[5]

As the described debate proceeded the equity action of *Sokel* v. *Nickoli* came to second review (356 Mich 460, decided June 6, 1959). On that occasion the Court concluded unanimously (p 467):

"In regard to appellants' complaint that the lower court denied them a jury trial, we call attention to the statute (CL 1948, § 618.21 [Stat Ann § 27.1001]) providing that the court shall decide whether a jury is necessary, and, we believe, the following, as stated in *Chamberlain* v. *Eddy* [1908], 154 Mich 593, 604, 605, applies:

" 'We are not impressed with the importance of a jury to decide any question in the case. A chancellor can do it as well. Where the jurisdiction of equity is clear, as in this case, there is no obligation to send questions of fact to the jury.' "

The significance of the stated distinction between the purposeful substance of law and equity cannot be overstressed, most certainly in the context of this business of verdicts advisory. As early as *Dunn* v. *Dunn* (1863), 11 Mich 285, an action for divorce wherein a jury was assembled "to try and determine whether the acts of adultery set up in the answer

_____

[5] See recent exemplification of this in *Sternberg* v. *Baxter* (1964), 373 Mich 8, 18, 19, quoting Pomeroy and *Brown* v. *Kalamazoo Circuit Judge, supra.*

had been committed", Justice CAMPBELL wrote (p 286):

"The reason for this difference is, that in an action at law the jury are the sole judges of questions of fact, while in a court of equity there is no process by which the Chancellor can substitute the conscience or belief of a jury for his own; and he must find the facts on his own responsibility. * * * And there is no authority which I have discovered which renders it incumbent on any court of Chancery, or even proper, to follow a verdict which is not calculated to aid the conscience of the court, in solving questions of fact otherwise doubtful."[6]

*Second:* In *Brown* v. *Kalamazoo Circuit Judge, supra,* the Court acknowledged the dilemma of the chancellor; whether under the questioned statute of 1887 he should have entered his decree on strength of the special verdicts of the jury, or should "exercise his own judgment in the case". (p 276.) There as here the presented question was whether a demand for jury trial, made timely in the course of an equitable action, must be honored *as of right.* Here as in *Brown* the "question has been raised in several parts of the State, and needs to be settled in order to procure uniformity of practice". (*Brown* at 276.)

Judge Van Domelen, perceivably in doubt as the record shows with respect to the substance as well as the procedure which was or may have been effected in 1963, instructed the jury in detail with respect to what upon factual test became a complex accounting action; an action which, being essentially

---

[6] The reader may with profit study the Court's unusually forceful emphasis of these words when, upon application for rehearing of *Detroit National Bank* v. *Blodgett* (1897), 115 Mich 160, 169–173 (another action for foreclosure), counsel for the defendants urged vainly that *Brown* v. *Kalamazoo Circuit Judge* should be overruled.

equitable (*Second Michigan Cooperative Housing Association* v. *First Michigan Cooperative Housing Association* [1959], 358 Mich 252, 256), was bound to be determinative of the issue of payment of the mortgage or mortgages defendants say were merged and satisfied. I perceive no need for review of these instructions for error, the jury's verdict being advisory as the trial judge finally decided. Rather, it is suggested that our task is to determine whether, without remand, the circuit court's decretal judgment can be affirmed or reversed with traditional finality. My answer is "No".

The proof for and against payment of the two mortgages, and of the claimed legal merger of one with the other, was sharply conflicting. Plaintiff claimed and defendants denied that the parties had arrived at an account stated, each arguing upon the facts the legal questions Division 3 considered (21 Mich App at 487, 488). As for the defendants' counterclaim, no proof worthy of note was offered in support thereof, either as to liability or damages as pleaded. They claim only on this appeal that "The evidence supports the finding of the jury and court that neither party was entitled to recover". In these circumstances, regrettably, their counterclaim and jury demand brought about an unnecessary and fruitless jury trial.

Today's difficulty is that we have before us no independent opinion of the trial judge upon the facts, and no finding or determination by him beyond this disposition of plaintiff's motion to vacate the jury's verdict and enter a judgment of foreclosure:

"This court adopts the verdict of the jury as advisory so as to erase any doubts as to its efficacy.

"If the accounts between plaintiff and defendants are evenly balanced, then it follows that there is

nothing due on the real estate mortgage. The court finds that the chattel mortgage was merged in the real estate mortgage and was extinguished so there would be nothing due under the chattel mortgage and that should be discharged. Both mortgages were based upon the sale of goods and merchandise to defendants by plaintiff, and if there is nothing owed to the plaintiff by defendant as determined by the verdict, the mortgages must be treated as paid in full."

*Third:* Refer to *Beacon Theatres* v. *Westover, supra,* at p 255 and *Dairy Queen* v. *Wood* (1962), 369 US 469 (82 S Ct 894, 8 L Ed 2d 44) ; also most recent *Ross* v. *Bernhard* (1970), 396 US 531 (90 S Ct 733, 24 L Ed 2d 729). The first two of these cases are cited by defendants' counsel as authority for the proposition that his clients were "entitled to a jury trial by reason of the trial court's proper determination of the sequence of trial". This means, as I gather, that defendants claim they were entitled *of right* to obligatory acceptance of the jury's general verdict, distinguished from its advisory nature (see GCR 1963, 509.4 and 517.1).

I cannot agree with counsel in such regard. So long as the *Brown* case stands as it does—and should—on our books, the right and duty of the trial court to hear and determine this equity case to decretal judgment, with or without an advisory jury, is constitutionally sound law in our State. In Michigan, unlike the Federal practice with its involvement of specific acts of Congress and the Seventh Amendment,[7] we determine properly under

---

[7] "In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law."

our Constitution the extent of equity's jurisdiction, duties and powers. Our practice is governed by the rule set forth in *Vaughan* v. *Wayne Circuit Judge* (1908), 153 Mich 478, 480, followed in *F. M. Sibley Lumber Co.* v. *Wayne Circuit Judge* (1928), 243 Mich 483, 485. It calls up the application of sound judicial discretion with no constitutional right of sequence of trial or jury trial involved; whenever the jurisdiction of equity is unquestioned, as here in *Wolf*.

*To conclude:*

I believe it unwise to undertake decisional review of this decretal judgment without an opinion of the chancellor wherein he has found the facts and dealt with such legal questions as are requisite to determination of the case. In this instance the chancellor has not "expressed his personal views of the facts either as aided by the finding of the jury or independent thereof". (*Leser, supra* at 561.) And the profession knows that, upon *de novo* review of an equitable action, this Court depends much upon the opinion of the chancellor. I think we need such help, for the judge was "there" when the witnesses testified.

The situation being what it is, and the trial judge having heard all of the testimony given before the jury, I would remand specially rather than order a new trial or determine the case now. That the Court did in *Leser* decide finally is not to be taken as precedent, as Justice FELLOWS advised pointedly in our quotation of *Leser, ante* at p 260.

This plaintiff is entitled to that which, but for the defendants' demand for jury trial, it would have obtained as a matter of course, namely, an opportunity to argue the facts independently before Judge Van Domelen in effort to persuade him that—irrespective of the jury's general and advisory verdict—

the proof did not preponderate in favor of defendants' affirmative defenses. Therefore the Court of Appeals' order for reversal and remand for new trial should be vacated.

The record should be remanded for reargument of the cause before the trial judge, for preparation by him of an independent opinion, and for entry of a new decretal judgment which, consistent with the foregoing procedural views, should decide the merits of plaintiff's claimed right of foreclosure and defendants' denial thereof.

I suggest further that, if either or both of the contenders be dissatisfied with such new result, they be accorded right to have the trial court's new opinion and judgment certified to this Court for further consideration, all in conjunction with the present testimonial record and the received exhibits.

The issue of costs should abide the final result.

T. M. KAVANAGH, C. J., and T. E. BRENNAN, T. G. KAVANAGH, SWAINSON, and WILLIAMS, JJ., concurred with BLACK, J.

ADAMS, J., concurred in the result.